Simbi WATERS, et al., Plaintiffs,

v.

Marion BARRY, Jr., et al., Defendants.

Civ. No. 89-0707 (CRR).

United States District Court,
District of Columbia.

April 24, 1989.

See also, 711 F.Supp. 1125.

---

Arthur B. Spitzer and Elizabeth Symonds, American Civil Liberties Union Fund of the Nat. Capital Area, Washington, D.C., for plaintiffs.

Frederick D. Cooke, Jr., Corp. Counsel, Martin L. Grossman, Deputy Corp. Counsel, Arthur D. Burger, Victor E. Long and Robin C. Alexander–Smith, Asst. Corp. Counsel for District of Columbia, Washington, D.C., for defendants.

CHARLES R. RICHEY, District Judge.

On March 20, 1989, at the plaintiffs' behest, this Court issued a temporary restraining order that barred the defendants (the "District") from enforcing the provisions of the "Short Term Curfew Emergency Act of 1989." However, before the Court could address the merits of the plaintiffs' challenge, the District repealed the statute and replaced it with a new curfew law, the "Temporary Curfew Emergency Act of 1989" (the "New Law"). Through an amended complaint, the plaintiffs now challenge the New Law, and seek a temporary restraining order which would prohibit the New Law's enforcement, scheduled to begin this evening, April 24, 1989. Because the Court finds that the plaintiffs have satisfied the requirements for issuance of a temporary restraining order, the Court shall grant the plaintiffs' motion and shall temporarily enjoin enforcement of the New Law for a period of ten days.

The New Law, like its predecessor, imposes a blanket curfew on all individuals below the age of 18. The New Law makes it a crime for these minors to be on the streets of the District of Columbia between the hours of 11:00 p.m. and 6:00 a.m.[1] Unlike its predecessor, however, the New Law contains certain potentially significant exemptions. For instance, the New Law excludes from its reach minors "traveling in a motor vehicle," as well as minors "accompanied by a parent." The New Law also provides exemptions for minors returning "by way of a direct route" from certain specified activities within 60 minutes of the activity's termination, "if the activity has been registered with the Mayor in advance." The New Law exempts as well minors engaged in legitimate employment, so long as they carry proof of that employment, along with minors moved by "reasonable necessity" to carry out "emergency errands."

The record indicates that the Council of the District of Columbia sought partial

---

**1.** On Fridays and Saturdays, the curfew begins    at 11:59 p.m.

guidance in drafting the New Law from a juvenile curfew ordinance sustained in *Bykofsky v. Borough of Middletown*, 401 F.Supp. 1242 (M.D.Pa.1975), *aff'd without opinion*, 535 F.2d 1245 (3d Cir.1976), *cert. denied*, 429 U.S. 964, 97 S.Ct. 394, 50 L.Ed.2d 333. As a result, the New Law contains many of the exemptions deemed constitutionally significant in *Bykofsky*, and the District relies heavily upon that case in opposing the plaintiffs' motion.

Nevertheless, while similarities between the New Law and the ordinance upheld in *Bykofsky* do exist, it is important to note the respects in which the two diverge. First, unlike the *Bykofsky* ordinance, the New Law makes no exception for minors accompanied by adults generally, but exempts only minors accompanied by their parents. Second, unlike the *Bykofsky* ordinance, the New Law makes no exception for minors occupying the sidewalk in front of their own homes. Third, while the District contends that the New Law's "reasonable necessity" exception mirrors that in the *Bykofsky* ordinance, it is apparent that the latter's "reasonable necessity" exception is considerably more flexible, and grants greater leeway to account for the emergencies that arise in the course of daily existence.

Fourth, unlike the *Bykofsky* statute, the New Law does not allow a minor whose legitimate nighttime activities are not otherwise accommodated by the ordinance to obtain a permit authorizing such activities. Fifth, unlike the *Bykofsky* ordinance, the New Law does not authorize the Mayor to suspend the curfew short of its expiration date should circumstances warrant. Sixth, and again unlike the *Bykofsky* ordinance, the New Law does not contain a blanket exception for any minor "exercising First Amendment rights protected by the United States Constitution, such as the free exercise of religion, freedom of speech and the right of assembly." These distinctions may not render the New Law unconstitutional, but, at a minimum, they cast doubt on the District's contention that the *Bykofsky* decision clearly establishes the constitutionality of the New Law.[2]

Moreover, *Bykofsky* does not represent the only instance in which a federal court has considered the constitutionality of a juvenile curfew law. In *Johnson v. City of Opelousas*, 658 F.2d 1065 (5th Cir.1981) and *McCollester v. City of Keene*, 514 F.Supp. 1046 (D.N.H.1981), federal courts struck down such laws as unconstitutionally overbroad.[3] While it might fairly be said that the curfew law at issue in *Johnson* was broader than the New Law, it would be equally proper to say that the curfew law at issue in *McCollester* was more narrowly tailored than the New Law, at least in terms of exemptions. Both opinions, however, recognized the substantial constitutional interests that are sacrificed when the State makes innocent minors prisoners in their own homes or the police station "cellblocks" of this city. *Johnson*, 658 F.2d at 1072; *McCollester v. City of Keene*, 586 F.Supp. 1381, 1384–85 (D.N.H. 1984). Both recognize that the right to move about on the public streets when and how one chooses, so long as no harm is intended to others, is an essential component of life in our free society. *See also Papachristou v. City of Jacksonville*, 405 U.S. 156, 164, 92 S.Ct. 839, 844, 31 L.Ed.2d 110 (1972) (the right to "wander" and "stroll" as one pleases has "encouraged lives of high spirits rather than hushed, suffocating silence"). This right, precious anywhere, takes on added symbolic value in the nation's capital to its young and older inhabitants and those who visit here;

**2.** In any event, as the District conceded at argument, the *Bykofsky* decision (as affirmed without opinion by the Third Circuit) would not be binding on this Court even if the statute were on all fours with the New Law. It would be entitled to the weight given all relevant precedent, of course, but it would not be binding.

**3.** In *Naprstek v. City of Norwich*, 545 F.2d 815 (2d Cir.1976), the Second Circuit rejected a juvenile curfew statute on vagueness grounds— while the statute described the hour upon which the curfew commenced, it contained no hour of termination. *Naprstek* was an easy case, involving as it did an extreme example of shoddy legislative draftsmanship. *Naprstek* is of little utility here, however, as the New Law is clearly more carefully crafted than the statute in that case.

the very concerns that make safe streets so important here, of all places, demand that safety not be achieved by brutishly sweeping the streets of people.

The Court is further concerned with the potential (the plaintiffs would say *inevitable*) discrimination inherent in the operation of the New Law. The Court is greatly concerned that the New Law's impact will be felt most severely by the poorer of this city's inhabitants, i.e., those lacking the sumptuous private yards or other recreational areas in which to pass a warm summer evening. As the plaintiffs note, "[i]t appears likely that *all* of the outdoor areas of public housing projects are 'street[s], sidewalk[s], park[s], or other outdoor public place[s]' within the meaning" of the New Law. *Pl.'s Reply Mem.* at 8, n. 6. Under these circumstances, it appears that the New Law's inevitable operation may well burden the rights of the poor *more* than the rights of the affluent. The New Law's automobile exception, to the Court an effective exemption for the wealthy teen, compounds this concern. Further, the Court is very uncomfortable with the potential long-term consequences of an arrest pursuant to the New Law.

While conceding the potential strength and relevance of *Bykofsky*,[4] the above-expressed concerns convince the Court that the plaintiffs have shown, at the very least, a substantial possibility of ultimate success on their claim that the New Law is unconstitutionally overbroad.[5] As is familiar to all, the likelihood of success is the first factor to be considered in evaluating the propriety of a temporary restraining order. *See Nat'l Wildlife Fed. v. Burford,* 835 F.2d 305, 318 (D.C.Cir.1987) (reciting factors). It is worth noting, however, that a mathematical probability of success is not required; some likelihood of success, when considered against the backdrop of equity's other factors, may be sufficient. *See Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977). At this stage, the Court holds only that the plaintiffs have made a solid case; it does not hold that they will ultimately succeed.[6]

The other factors in the equitable calculus, however, strongly favor issuance of the requested injunction. The possible infringement of constitutional interests occasioned by enforcement of the New Law, even considering its *possible* validity, is sufficient to show a threat of irreparable injury. *See Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Here, if enforcement is not enjoined, an entire class of law-abiding citizens will

---

**4.** The Court notes in particular the accepted principle that the constitutional rights of minors are not coextensive with those of adults. *Dallas v. Stanglin,* — U.S. —, — n. 4, 109 S.Ct. 1591, 1596 n. 4, 104 L.Ed.2d 18 (1989); *Bellotti v. Baird,* 443 U.S. 622, 635, 99 S.Ct. 3035, 3043, 61 L.Ed.2d 797 (1979) (plurality opinion).

**5.** The Court notes the District's argument that the plaintiffs lack standing to bring this suit because they have yet to be prosecuted. The Court finds little merit in this position; the Supreme Court has on several occasions allowed plaintiffs to lodge pre-enforcement challenges to criminal statutes, particularly when there exists a credible threat of prosecution, or when self-censorship might result from unchallenged enforcement. In the Court's view, both circumstances are present here. *See Virginia v. American Booksellers Ass'n,* 484 U.S. 383, 108 S.Ct. 636, 642, 98 L.Ed.2d 782 (1988) (self-censorship); *Babbitt v. United Farm Workers,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) ("When the plaintiff has alleged an

intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.") (cited case omitted). The plaintiffs' standing, however, would seem to apply only with respect to the plaintiff's facial challenge to the statute. Without deciding the issue, of course, it appears to the Court that the plaintiffs lack standing to lodge a traditional "as applied" challenge to the New Law.

**6.** As the Court finds that the plaintiffs' argument that the New Law is unconstitutionally overbroad is sufficient to sustain their request for injunctive relief, the Court does not address the plaintiffs' arguments that the New Law violates minors' equal protection and fourth amendment rights, nor does the Court consider the question of whether the New Law violates the liberty and privacy interests of parents.

be forced indoors tonight at the possible expense of their First Amendment rights. This threat satisfies the second aspect of the equitable calculus.

The Court further fails to see how temporary postponement of the New Law's enforcement would cause the District or any other person "substantial harm." *See Nat'l Wildlife Fed.*, 835 F.2d at 318. The District of Columbia has maintained free streets for at least the last 20 years, and it is difficult to imagine that an additional ten days will occasion any hardship, much less "substantial" hardship. As for others, such as the juveniles the New Law is intended to protect, the record frankly suggests to the Court that the New Law will be wholly ineffective in reducing the incidence of juvenile crime—both that committed by juveniles as well that committed against juveniles. While the Court's estimation of the merits of the New Law may be only tangentially relevant to its constitutionality, the New Law's likely effect is germane in considering the results that would flow from enjoining its enforcement. The Court sees little or no result, and therefore concludes that the risk of "substantial harm" to the defendants or other persons favors issuance of the requested relief.

Finally, the public interest favors reasoned, thorough judicial consideration of laws that may intrude upon constitutional interests. It opposes the hasty enforcement of legislation which may suffer from constitutional infirmities. That interest is magnified when the legislation at issue involves a decision by the State to restrict our childrens' right to walk the streets at night. Certainly, there are those who would contend that the compelling public interest in safe streets demands immediate enforcement of the New Law. They may be right, but only so long as the New Law comports with the Constitution. In the Court's view, the greater good favors making this determination before enforcement, and not after a law mistakenly applied has denied our citizens and those who visit here their constitutional rights.

Because the Court concludes that the plaintiffs have met the standards for a temporary restraining order, the plaintiffs' motion shall be granted. An Order shall issue describing the terms of the temporary restraining order, as well as setting forth the schedule by which a final determination of the plaintiffs' claims shall be made on the merits.

## TEMPORARY RESTRAINING ORDER

Upon consideration of plaintiffs' application for an order temporarily restraining the defendants from implementing or enforcing the District of Columbia "Temporary Curfew Emergency Act of 1989," of the declarations and legal memoranda filed in support thereof and in opposition thereto, of the arguments of counsel, and of the entire record in this action;

It appearing to the Court that plaintiffs are likely to succeed on the merits of their action; that they are likely to suffer irreparable injury if defendants are not restrained from implementing or enforcing the District of Columbia "Temporary Curfew Emergency Act of 1989"; that the defendants will not be harmed if the implementation or enforcement of the said Act is temporarily restrained, pending the Court's further consideration of this matter; and that the public interest favors the entry of such an order,

It is, therefore, this 24th day of April, 1989,

ORDERED that plaintiffs' application for a temporary restraining order is hereby granted; and it is

FURTHER ORDERED, that the defendants and each of them, their agents, servants, and employees, and all persons acting under their direction or in concert with them, be and are hereby restrained and enjoined from implementing or enforcing the District of Columbia "Temporary Curfew Emergency Act of 1989," for a period of ten (10) days from the date hereof; and it is

FURTHER ORDERED, that this order shall be effective upon plaintiffs' bond of $100.00, previously posted in this action,

remaining posted with the Clerk of Court in accordince with Fed.R.Civ.P. 65.1.