Angel RAMOS, By and through his next friend, Janet RAMOS, Richard Ramos, by and through his next friend, Janet Ramos, and Janet Ramos

v.

TOWN OF VERNON and Rudolph Rossmy, police chief in his official capacity.

No. 3:98CV1944 (AHN).

United States District Court, D. Connecticut.

May 13, 1999.

Ann Parent, Connecticut Civil Liberties Union Foundation, Jon Schoenhorn, Law Office of Jon L. Schoenhorn, Jeanne Zulick, Law Office of Jon L. Schoenhorn, Hartford, for plaintiff.

Jerome Levine, Vernon, Martin Burke, Rockville, for defendant.

## RULING ON REQUEST FOR INJUNCTIVE RELIEF

NEVAS, District Judge.

The plaintiffs, Angel Ramos,[1] Richard Ramos, and Janet Ramos, bring this 42

---

1. In a companion ruling being issued today, the Court holds that Angel Ramos's claims are moot due to his reaching the age of eighteen.

U.S.C. § 1983 action against the defendants, Town of Vernon ("Vernon") and its police chief, Rudolph Rossmy ("Rossmy"), challenging the validity of Vernon's night-time curfew ordinance for persons under the age of eighteen. The plaintiffs allege that the curfew ordinance violates their constitutional rights as guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution, and their rights as guaranteed by various provisions of the First Article of the Connecticut Constitution.

Currently pending is the plaintiffs' Motion for a Preliminary Injunction. For the reasons that follow, this motion [doc. # 4] is DENIED.

## BACKGROUND

### I. The Curfew Ordinance

On August 2, 1994, Vernon enacted "An Ordinance Establishing a Curfew" (the "curfew ordinance" or "ordinance"). (Compl. for Declaratory and Injunctive Relief ¶ 1 [hereinafter "Compl."].) The ordinance creates a general curfew for persons under eighteen that is in effect from 11:00 p.m. to 5:00 a.m. on weeknights and 12:01 a.m. to 5:00 a.m. on weekends. (See id.) The ordinance sets forth a number of exceptions to the curfew's general prohibition. (See id.)

The curfew ordinance states that it was enacted to:

1. protect minors from each other and from other persons on the streets during nocturnal hours;

2. promote parental responsibility for and supervision of minors; and,

3. protect the general public from nocturnal mischief and crime committed by minors.

Curfew Ordinance § 8–4(a) (attached as Ex. A to Compl.). The ordinance establishes the following offenses:

1. *Curfew for Minors.* It shall be unlawful for any minor to remain, idle, wander, stroll or play in any public place or establishment in the Town during curfew hours unless accompanied by a parent, guardian, custodian or other adult person having custody or control of such minor or unless the minor is on an emergency errand or specific business or activity directed or permitted by his parent, guardian, or other adult person having the care and custody of the minor or where the presence of such minor is connected with or required by some legitimate employment, trade, profession or occupation, or unless the minor is exercising his/her [F]irst [A]mendment rights.[2]

2. *Parents' Responsibility.* It shall be unlawful for the parent, guardian or other adult person having custody or control of any minor under the age of sixteen (16) to suffer or permit or by inefficient control to allow such person to be on the streets or sidewalks or on or in any public property or public place or establishment within the Town during the curfew hours. However, the provisions of this Section do not apply to a minor accompanied by his or her parent, guardian, custodian or other adult person having the care, custody or control of the minor, or if the minor is on an emergency errand or specific business or activity directed by the minor's parent, guardian, custodian or other adult having the care and custody of the minor or if the parent, guardian or other adult person herein has made a missing person notification to the Police Department.

Curfew Ordinance § 8–4(c).

The curfew ordinance provides the following definitions:

1. *Curfew Hours: For minors under eighteen (18) years old:* shall be between 11:00 p.m. on any Sunday, Mon-

---

2. After the start of this action, the Vernon town council amended the curfew ordinance in December 1998, with an effective date of

January 1, 1999, to add the language "or unless the minor is exercising his/her [F]irst [A]mendment rights."

day, Tuesday, Wednesday, or Thursday until 5:00 a.m. of the following day; and 12:01 a.m. until 5:00 a.m. on any Saturday or Sunday.

2. *Emergency:* shall mean an unforeseen combination of circumstances or the resulting state that calls for immediate action. The term includes, but is not limited to, a fire, a natural disaster, or automobile accident, or any situation requiring immediate action to prevent serious bodily injury or loss of life.

3. *Establishment:* shall mean any privately-owned place of business operating for a profit to which the public is invited, including but not limited to any place of amusement or entertainment.

4. *Guardian:* shall mean a person who, under court order, is the guardian of the person of a minor; or a public or private agency with whom a minor has been placed by the court.

5. *Minor:* shall mean any person under eighteen (18) years of age.

6. *Parent:* shall mean a person who is a natural parent, adoptive parent, or step-parent of another person; or at least eighteen (18) years of age and authorized by a parent or guardian to have the care and custody of a minor.

7. *Public Place:* shall mean any street, alley, highway, sidewalk, park, playground or place to which the general public has access and a right to resort for business, entertainment, or other lawful purpose. A public place shall include but not be limited to any store, shop, restaurant, tavern, bowling alley, cafe, theater, drug store, pool room, shopping center and any other place devoted to amusement or entertainment of the general public. It shall also include the front or immediate area of the above.

8. *Remain:* shall mean to linger or stay, or fail to leave the premises when requested to do so by a police officer or the owner, operator, or other person in control of the premises.

Curfew Ordinance § 8–4(b)(1)–(8).

The curfew ordinance provides the following exception for special functions:

Any minor attending a special function or event sponsored by any religious, school, club, or other organization that requires such minor to be out at a later hour than that called for in this section shall be exempt from the provisions of this ordinance provided such minor has the approval of his or her parent or guardian to attend said function or event. Such minors who attend said function or event shall be required to be in their homes or usual place of abode within one half hour after said function or event is ended.

Curfew Ordinance § 8–4(d). This exception is in addition to the exceptions contained in the general curfew definition which, as noted above, provides that no violation occurs if:

(1) the minor is accompanied by a parent, guardian, custodian or other adult person having custody or control of such minor; or

(2) the minor is on an emergency errand; or

(3) the minor is engaged in specific business or activity directed or permitted by his parent, guardian, or other adult person having the care and custody of the minor; or

(4) the minor is engaged in some legitimate employment, trade, profession or occupation; or

(5) the minor is exercising his or her First Amendment rights.

*See* Curfew Ordinance § 8–4(c).

The curfew ordinance authorizes police officers to issue citations to minors sixteen or seventeen years old. *See* Curfew Ordinance § 8–4(e)(1). For minors under the age of sixteen, the ordinance requires police officers to issue a warning for the first infraction. *See* Curfew Ordinance § 8–4(e)(2)(A). If a minor under sixteen fails

to heed a warning or has been warned on a previous occasion, a police officer can take the minor to the Police Department and notify the parent, guardian or other adult person having the care and custody of the minor. *See* Curfew Ordinance § 8–4(e)(2)(B).

For minors sixteen and seventeen years of age who violate the curfew, the ordinance provides that they shall be fined no more than $50 for the first infraction, $75 for the second infraction, and $90 for all subsequent infractions. *See* Curfew Ordinance § 8–4(f)(2). For minors under sixteen, the ordinance provides that the parent, guardian or other adult person having the care and custody of a minor, who has received notice under § 8–4(e)(2), shall be fined no more than $50 for the first infraction, $75 for the second infraction, and $90 for all subsequent infractions. *See* Curfew Ordinance § 8–4(f)(3)(A).

## II. The Parties and Proceedings

The plaintiff, Richard Ramos, is a fourteen year old resident of Vernon. (*See* Compl. ¶ 8.) He alleges that with his mother's permission he has engaged and continues to engage in social activities with his friends that continue past the start of the curfew. (*See id.* ¶ 10.) He claims that he has literally had to run home from such activities for fear of being caught out during curfew hours. (*See id.*) The other plaintiff, Janet Ramos, is a resident of Vernon and the mother of Richard Ramos. (*See id.* ¶ 11.) She alleges that the curfew ordinance usurps her parental authority and violates her right to set her own limits on her son's activities as she sees fit. (*See id.* ¶ 12.)

Vernon is a Connecticut municipality organized under the laws of the State of Connecticut that enforces its juvenile curfew ordinance as a matter of official policy. (*See id.* ¶¶ 13–14.) Rossmy is the chief of police for Vernon and is responsible for the enforcement of the ordinance. (*See id.* ¶ 15.)

After the filing of this action, the Court provided the parties with time to conduct discovery and retain experts. In January and February 1999, the Court conducted a lengthy hearing which consolidated the plaintiffs' motion for a preliminary injunction with a trial on the merits. *See* Fed. R.Civ.P. 65(a)(2).

## STANDARD OF REVIEW

A party may seek a declaratory judgment pursuant to 28 U.S.C. § 2201 in accordance with the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 57. "The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." *Id.* Section 2201 of Title 28 provides:

(a) In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). Moreover, "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202.

## DISCUSSION

The plaintiffs claim that the curfew ordinance is unconstitutional for a number of reasons. First, they allege that the ordinance is unconstitutionally vague. Second, they argue that the ordinance violates the First Amendment because it is overly broad and not a reasonable time, place and manner restriction on speech. Third, the plaintiffs allege that the ordinance violates the Fourteenth Amendment's Equal Protection Clause because it impermissibly burdens the fundamental rights of minors,

including, their First Amendment right to freedom of speech and their right to freedom of movement. Fourth, they argue that the ordinance violates the minors' Fourth Amendment right to be free from unreasonable searches and seizures. Fifth, the plaintiffs claim that the ordinance violates the Fourteenth Amendment because it infringes upon the liberty interest of the parents of minors to determine how their children are raised. Lastly, they argue that the ordinance violates several provisions of the Connecticut Constitution. Each of these objections will be considered in turn.

### I. Vagueness of the Ordinance

■ The plaintiffs contend that the following words and phrases in the ordinance are vague: "remain, idle, wander, stroll or play," "specific business or activity directed or permitted by his parent, guardian, or other adult person having the care and custody of the minor," "emergency errand," "legitimate employment, trade, profession or occupation," "special function or event sponsored by any religious, school, club, or other organization," and "exercising his/her [F]irst [A]mendment rights." The Court finds that, in the context of this curfew ordinance, none of these terms are vague.

The Supreme Court has provided the following rationale for finding vague laws constitutionally infirm:

Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on

an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.

*Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *see also Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) (stating law is void for vagueness when it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden and when it encourages arbitrary and erratic arrests and convictions). The Court has indicated that the more important aspect of this analysis is "not actual notice, but ... the requirement that a legislature establish minimal guidelines to govern law enforcement." *Kolender v. Lawson,* 461 U.S. 352, 358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (citation and internal quotation marks omitted).

Here, plaintiffs contend that the ordinance's use of the words "remain, idle, wander, stroll or play" to delineate the conduct in which minors may not engage during curfew hours constitutes an unconstitutionally vague proscription because the words fail to provide adequate notice of what is prohibited.

In evaluating a similar provision, the Ninth Circuit concluded that such a provision could withstand a vagueness challenge "if the ordinance is treated as prohibiting all juvenile nocturnal presence and if that broad interpretation does not unconstitutionally burden the rights of minors and their parents." *Nunez v. City of San Diego,* 114 F.3d 935, 943–44 (9th Cir.1997); *see also Bykofsky v. Borough of Middletown,* 401 F.Supp. 1242, 1252 (M.D.Pa. 1975) (holding "remain" not vague where defined as "to stay behind, to tarry and to stay unnecessarily upon the streets, including the congregating of groups ... in which any minor involved would not be using the streets for ordinary and serious purposes such as mere passage or going home"). Indeed, as the Fourth Circuit recently recognized "the vagueness doctrine cannot 'convert into a constitutional

dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.'" *Schleifer v. City of Charlottesville,* 159 F.3d 843 (4th Cir.1998) (quoting *Colten v. Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972)), *cert. denied,* —— U.S. ——, 119 S.Ct. 1252, 143 L.Ed.2d 349 (1999).

Here, the Court finds that what was intended and is clearly prohibited by the curfew ordinance is the presence of minors on the streets or in a public place unless they satisfy one of the ordinance's numerous exceptions. No reasonable person can seriously claim that they do not understand that such activity is what the ordinance generally proscribes. Minors undoubtedly have fair warning in regard to what the ordinance prohibits. Further, the simple determination of whether a minor is present on the streets or in a public place after the start of the curfew is not one that vests excessive discretion in police officers.

■ The plaintiffs also claim that the vagueness of the ordinance's exceptions provides police officers with too much discretion when determining whether an exception applies. Specifically, they argue that the following terms, which define the ordinance's exceptions, are vague: "specific business or activity directed or permitted by his parent, guardian, or other adult person having the care and custody of the minor," "emergency errand," "legitimate employment, trade, profession or occupation," and "special function or event sponsored by any religious, school, club, or other organization."

While it is true that police officers must exercise some discretion when determining whether any of the ordinance's exceptions apply to a particular minor, the Court does not believe that any of these terms are so vague as to vest unduly basic policy matters in police officers. Although it is possible that people may have differing opinions

as to the meaning of these terms, this possibility does not render these exceptions impermissibly vague. The Court finds that they are sufficiently clear to prevent "arbitrary and discriminatory applications," *Grayned,* 408 U.S. at 109, 92 S.Ct. 2294, and, therefore, will not invalidate these provisions. Moreover, the Court notes that at the hearing, while many hypothetical situations where application of these provisions may be difficult were raised, very little credible testimony about actual problems encountered in the application of these terms was presented. The inability of police officers to articulate flawlessly how they would apply these exceptions to out-of-context, hypothetical situations does not provide an adequate basis for finding these terms unconstitutionally vague. *See Schleifer,* 159 F.3d at 854 (noting that "hedged deposition testimony about a speculative hypothetical does not demonstrate that police will enforce the curfew arbitrarily").

■ Lastly, the plaintiffs argue that the First Amendment exception is unconstitutionally vague. While this exception would be clearer if, as in other curfew ordinances, it provided specific examples of what constitutes First Amendment activity, *see, e.g., id.* at 846 (upholding ordinance that excepted "minors who are 'exercising First Amendment rights protected by the United States Constitution, such as the free exercise of religion, freedom of speech and the right of assembly'"), the Court declines "to place city councils between a rock and a hard place," *id.* at 853, by requiring them to attempt to protect First Amendment freedoms, but then demanding an unobtainable level of precision in that attempt. The basic protections of the First Amendment are ones that ordinary citizens know and comprehend. Thus, this exception provides citizens with sufficient notice of the type of activity that falls within the exception. While difficult cases may arise, this fact neither alters the clear, core protections the exception provides, nor justifies severing a provision aimed at

ensuring that minors enjoy unimpeded their First Amendment rights. Moreover, the First Amendment exception does not give police officers unfettered discretion. As noted above, the inability of police officers to articulate flawlessly their views about how an exception applies to a given hypothetical situation does not provide adequate grounds to invalidate the exception.

## II. Overbreadth

The plaintiffs also argue that the ordinance is overbroad because it chills the exercise of their First Amendment rights. The Court disagrees.

"Minors, as well as adults, are protected by the Constitution and possess constitutional rights.... [Although] the State has somewhat broader authority to regulate the activities of children than of adults." *Planned Parenthood v. Danforth*, 428 U.S. 52, 74, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976) (citations omitted); *see also In re Winship*, 397 U.S. 358, 368, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (holding constitutional safeguard of proof beyond a reasonable doubt is required during the adjudicatory stage of a delinquency proceeding); *Tinker v. Des Moines Indep. Community Sch. Dist.*, 393 U.S. 503, 511, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) (ruling students are persons under Constitution who possess fundamental right of free speech and, thus, can wear black arm bands at school to protest Vietnam war); *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943) (ruling students who were Jehovah's witnesses possess freedom to worship and cannot be compelled by school board to salute flag and pledge allegiance). In addition, the Fifth Circuit has held that minors may possess to some degree the right to associate freely for political, social, legal or economic purposes. *See Johnson v. City of Opelousas*, 658 F.2d 1065, 1072 (5th Cir. 1981).

■■ Under the overbreadth doctrine, a plaintiff has standing to "challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). The Supreme Court has ruled that a state statute should not be found to be overbroad, however, unless "it is not readily subject to a narrowing construction by the state courts," *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975), and its deterrent effect on legitimate first amendment activity is both real and substantial, *see id.* (citation omitted).

■ In this case, the plaintiffs argue that even with the exception for First Amendment activities the ordinance is still overbroad. They claim that due to the vagueness of the First Amendment exception itself the ordinance may chill activities that the First Amendment protects. However, as previously noted, the Court finds the ordinance to be stronger with, than without, an exception that protects First Amendment activities. *See, e.g., Qutb v. Strauss*, 11 F.3d 488, 494 (5th Cir.1993) (upholding curfew ordinance where "[m]ost notably, if the juvenile is exercising his or her First Amendment rights, the curfew does not apply"). Further, the Court finds this laudable attempt to protect First Amendment rights to be a content-neutral regulation that does not burden substantially more speech than necessary to further the town's valid goals. *See Turner Broad. Sys. v. FCC*, 512 U.S. 622, 662, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). It is apparent that the curfew ordinance protects core First Amendment activities. Given this, the potential chilling effect, if any, is simply too speculative to justify invalidating the ordinance.

## III. Equal Protection Violation

The plaintiffs allege that the ordinance violates the Fourteenth Amendment's

Equal Protection Clause because it impermissibly burdens the fundamental rights of minors. In this case, the Court holds that only intermediate scrutiny applies to these claims and that, under that standard, the ordinance survives constitutional scrutiny.

■ In analyzing an equal protection claim, a court must first determine the level of scrutiny to apply. *See, e.g., Schleifer*, 159 F.3d at 846; *Nunez*, 114 F.3d at 944. Generally, legislation is presumed to be constitutional and will be sustained if the classification drawn is rationally related to a legitimate state interest. *See City of Cleburne v. Cleburne Living Ctr. Inc.*, 473 U.S. 432, 439–40, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). A classification may be subject to a more demanding standard of review if it disadvantages a suspect class or impinges upon a fundamental right. *See Plyler v. Doe*, 457 U.S. 202, 216–17, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982).

■ Here, the curfew ordinance's basic prohibition establishes an age-based classification. Age, however, is not considered a suspect classification and, therefore, distinctions based on age are not accorded a more demanding standard of review, but instead are subject only to rational basis review. *See Gregory v. Ashcroft*, 501 U.S. 452, 470, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991).

The plaintiffs argue that their fundamental rights have been violated and, consequently, strict scrutiny should apply. In particular they allege that the curfew ordinance impinges upon their fundamental right to travel. *See, e.g., Nunez*, 114 F.3d at 944 (finding "[c]itizens have a fundamental right of free movement"); *Qutb*, 11 F.3d at 492 (assuming, without deciding, that "the right to move about freely is a fundamental right").

The Supreme Court has never clearly indicated the appropriate level of scrutiny to apply to legislation that affects minors. In general, "[m]inors ... are protected by the Constitution and possess constitutional

rights." *Planned Parenthood of Central Missouri*, 428 U.S. at 74, 96 S.Ct. 2831. However, a plurality of the Supreme Court has "recognized three reasons justifying the conclusion that the constitutional rights of children cannot be equated with those of adults: the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child rearing." *Bellotti v. Baird*, 443 U.S. 622, 634, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979).

After careful consideration of the *Bellotti* factors and other Supreme Court jurisprudence involving minors, the Court concludes, in accord with the Fourth Circuit, that "because children do not possess the same rights as adults, [a curfew] ordinance should be subject to less than the strictest level of scrutiny." *Schleifer*, 159 F.3d at 847 (citing, *inter alia, Carey v. Population Servs., Int'l*, 431 U.S. 678, 693 n. 15, 97 S.Ct. 2010, 52 L.Ed.2d 675 (plurality opinion) (noting that when minors are involved the level of scrutiny "is apparently less rigorous than the 'compelling state interest test' applied to restrictions on the privacy rights of adults")). In further accord with the Fourth Circuit, the Court holds that intermediate scrutiny applies to plaintiffs' Fourteenth Amendment Equal Protection claims. *See id.* In order to survive intermediate scrutiny the ordinance must be substantially related to important governmental interests. *See Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 724, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982).

■ The plaintiffs do not contend that Vernon's stated reasons for enacting the curfew do not constitute important or compelling governmental interests. Indeed, many courts have recognized that municipalities have a compelling interest in protecting their entire community from crime, *see Schall v. Martin*, 467 U.S. 253, 264, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984), and in protecting the safety and welfare of minors specifically, *see, e.g., Schleifer*, 159 F.3d at 848; *Nunez*, 114 F.3d at 946; *Qutb*, 11

F.3d at 492. Thus, the relevant question for the purposes of plaintiffs' equal protection claim is whether the ordinance's means are substantially related to its goals.

In order to evaluate properly the ordinance's means-ends fit, the Court must examine both the evidence supporting the need for the curfew and the scope of the curfew itself. *See Schleifer*, 159 F.3d at 849–52.

In regard to the evidence supporting the need for a curfew, the Court declines to insist on rigorous, scientific proof of the "wisdom" of Vernon's decision to implement a curfew ordinance. *See id.* at 849; *see also Qutb*, 11 F.3d at 493 n. 7 (refusing to require detailed studies of the precise severity, nature and characteristics of city's juvenile crime problem). While other federal courts have required fairly precise evidence of the need for a curfew ordinance, *see Nunez*, 114 F.3d at 947; *Gaffney v. City of Allentown*, No. Civ. A. 97–4455, 1997 WL 597989, at *6–*7 (E.D.Pa. Sept.17, 1997), the courts in these cases employed strict scrutiny to analyze the curfew ordinances at issue. Given this Court's rejection of that standard and decision to apply only intermediate scrutiny, a similar level of precision is not required. Intermediate scrutiny only requires a "substantial" relation between the means and ends of legislation. *See Hogan*, 458 U.S. at 724, 102 S.Ct. 3331. Here, the requisite substantial means-ends relationship exists.

When Vernon enacted its curfew ordinance in 1994, there was a perception that drug and gang activity, as well as drug-related violence, was occurring in the town. (*See* Pl.'s Proposed Findings of Fact and Conclusions of Law ¶ 13 [hereinafter "Pl.'s Findings"].) In addition, a sixteen year old Vernon resident had recently been murdered, (*see id.* ¶ 7), and a 1994 Vernon youth survey indicated that many of the youths in Vernon were concerned about guns and violence. (*See id.* ¶ 14.)

Since Vernon enacted the juvenile curfew, there has been in Vernon, as in most of the country, a decrease in crime. (*See id.* ¶ 168.) The parties have presented conflicting expert testimony about whether the decrease in crime in Vernon is correlated with and attributable to enforcement of the ordinance. (*Compare id.* ¶ 169, *with* Def.'s Proposed Findings of Fact and Conclusions of Law ¶ 18.) As noted above however, the Court does not demand scientifically certain proof of the ordinance's effectiveness in this case. Given the multiplicity of factors that may affect crime rates, the Court declines to overrule a legislative judgment that a curfew ordinance can help achieve the goals of reducing juvenile crime and juvenile victimization, as well as facilitating parental authority, simply because scientific uncertainty exists in regard to the ordinance's effectiveness. Thus, the Court concludes that the history and perception of criminal activity in Vernon, combined with the conflicting evidence regarding the ordinance's effectiveness, provide adequate grounds to find that the means of the ordinance are substantially related to its goals.

In regard to the scope of the curfew, the Court finds that the ordinance's limitations on the activities of minors are not so onerous that they violate the Constitution. The curfew does not begin until relatively late at night and ends early in the morning. Further, it applies only to persons under eighteen years of age. *Cf. Schleifer*, 159 F.3d at 852 (finding Charlottesville's curfew one of the least restrictive in the nation because it "applies only to minors less than seventeen years of age, does not begin until midnight on weekdays and 1:00 a.m. on weekends, [and] lifts at 5:00 a.m. each morning").

In addition, the Court finds that the number and breadth of exceptions to the curfew ordinance render its scope sufficiently narrow to withstand intermediate

scrutiny.[3] The ordinance contains exceptions for emergency errands, employment, specific parentally-permitted activities, special school or other organization-sponsored functions, and First Amendment activities. In addition, a minor can engage in any activity after the curfew begins if accompanied by a parent, guardian, custodian or other adult person who has custody and control of the minor. *Cf. Schleifer,* 159 F.3d at 852 (noting that Charlottesville ordinance has eight detailed exceptions); *Qutb,* 11 F.3d at 490 (noting that Dallas curfew contains several broad exceptions). The exceptions to Vernon's ordinance provide minors with multiple opportunities to engage in legitimate activities outside of the home during curfew hours and, therefore, the ordinance's means are sufficiently tailored to fulfill, and substantially related to, the ordinance's legitimate ends.

## IV. Fourth Amendment Rights

■ The plaintiffs claim that the ordinance violates minors' Fourth Amendment right to be free from unreasonable searches and seizures. The Court is not persuaded by this argument.

The plaintiffs argue that the curfew ordinance violates the Fourth Amendment because it provides a vehicle for the wholesale stopping, questioning and searching of any young person in Vernon who appears to be under the age of eighteen. In support of this argument, they rely on Justice Brennan's concurring opinion in *Kolender* where he stated that "[m]erely to facilitate the general law enforcement objectives of investigating and preventing unspecified crimes, States may not authorize the arrest and criminal prosecution of an individual for failing to produce identification or further information on demand by a police officer." 461 U.S. at 362, 103 S.Ct. 1855.

The Court does not believe that the ordinance authorizes arrests and prosecution for failing to produce identification. The mere fact that police officers must inquire into a person's age in order to determine whether a curfew violation has occurred is not tantamount to arrest and prosecution for failing to produce identification. Under the ordinance, minors are subject to citation for a curfew violation if they are present in a public place during curfew hours without meeting one of the ordinance's enumerated exceptions. They are not subject to citation simply because they fail to produce identification.

Moreover, the plaintiffs' argument fails to recognize that the Fourth Amendment does not provide an absolute right to be free from searches and seizures. *See Waters v. Barry,* 711 F.Supp. 1121 (D.D.C. 1989). Indeed, "a right to be free from such intrusions exists only so long as there is not probable cause to believe that an offense has been committed." *See id.* (finding where officer reasonably concludes that person looks under eighteen that officer would have probable cause to believe person was violating curfew ordinance). Here, the mere fact that police officers may require a person, who they have probable cause to believe may be subject to the curfew ordinance, to produce proof of his or her age does not render the ordinance unconstitutional under the Fourth Amendment.

## V. Liberty Interest of Parents

■ The plaintiffs claim that the ordinance violates the Fourteenth Amendment because it infringes upon the liberty interest of the parents of minors to determine how their children are raised. The Court disagrees and holds that the ordinance does not constitute an unconstitutional infringement on the rights of parents.

**3.** The Court questions whether a curfew ordinance without exceptions for interstate travel, minors on the sidewalk adjacent to their home, and minors who are married or emancipated under state law, would survive strict scrutiny. An ordinance with such exceptions would, of course, be stronger than Vernon's current ordinance. However, as this Court believes intermediate scrutiny to be the appropriate standard, the lack of such exceptions in Vernon's ordinance is not dispositive in this case.

The Supreme Court has not clearly set forth the limits of a state's ability to interfere with the right of parents to raise their children as they see fit. *See Wisconsin v. Yoder,* 406 U.S. 205, 231, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (holding state compulsory high school attendance law interfered with "traditional concepts of parental control over the religious upbringing and education of their minor children"); *Meyer v. Nebraska,* 262 U.S. 390, 400, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (holding state prohibition against teaching of foreign languages frustrated "the natural duty of the parent to give his children education suitable to their station in life"). *But see Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (upholding conviction of guardian of minor for violating state law that prohibited minors from selling newspapers and periodicals on public streets).

Both the Fourth Circuit and the Fifth Circuit have held that a nighttime juvenile curfew ordinance does not interfere with parental authority to an unconstitutional extent. *See, e.g., Schleifer,* 159 F.3d at 853 (finding ordinance "prohibiting young children from remaining unaccompanied on the streets late at night, simply does not implicate the kinds of intimate family decisions considered" in, *inter alia, Yoder,* 406 U.S. at 231, 92 S.Ct. 1526, and *Meyer,* 262 U.S. at 400, 43 S.Ct. 625); *Qutb,* 11 F.3d at 496 (holding that broad exemptions in ordinance allow parents to make decisions for his or her child in many areas). *But see McCollester v. City of Keene,* 586 F.Supp. 1381, 1386 (D.N.H.1984) (finding curfew ordinance usurps "parental discretion in supervising a child's activities and impos[es] parental liability even where the parent exercised reasonable control or supervision").

In this case, the ordinance allows minors to engage in any activity during curfew hours if they are accompanied by a parent. Further, they may perform specific errands if a parent permits them. Under these circumstances, the plaintiffs' claim is, in essence, that parents have a constitutional right to allow their children to be on the streets and in public places at all hours of the night without any adult supervision. While some parents may believe that this type of independence is crucial for the development of their children, neither the record in this case, nor logic, nor common sense, persuade this Court that this type of parental discretion rises to the level of that with which the Supreme Court has held states may not interfere. *Cf. Yoder,* 406 U.S. at 231, 92 S.Ct. 1526; *Meyer,* 262 U.S. at 400, 43 S.Ct. 625. Therefore, this Court holds that the curfew ordinance does not violate the Fourteenth Amendment rights of parents.

*VI. Connecticut Constitution Claims*

The plaintiffs argue that the curfew ordinance violates several provisions of Article First of the Connecticut Constitution. In particular, they claim that the ordinance violates their free speech rights, their right to be free from unlawful searches and seizures, and their right to parental privacy. While these claims essentially mirror the plaintiffs' federal claims, significant issues exist in regard to whether the Connecticut Constitution provides greater protection of these rights than the United States Constitution. Thus, given the importance and peculiarly state law nature of these issues, the Court believes that certification of them to the Connecticut Supreme Court is appropriate.

The Uniform Certification of Questions of Law Act, Conn. Gen.Stat. § 51–199a, provides that a district court may certify "questions of law . . . which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state." Conn. Gen. Stat. Ann. § 51–199a(b) (West Supp.1998). This "procedure is best used for obtaining an authoritative state law ruling that affects the merits of a federal law suit."

188

*Bethphage Lutheran Serv., Inc. v. Weicker*, 965 F.2d 1239, 1246 (2d Cir.1992).

In the absence of controlling precedent in the decisions of the Connecticut Supreme Court, it is in the interests of justice that questions relating to the constitutionality of Vernon's curfew ordinance under the Connecticut Constitution be certified to the Connecticut Supreme Court.

## CONCLUSION

For the reasons stated above, the plaintiffs' Motion for a Preliminary Injunction [doc. # 4] is DENIED. In accordance with the Court's decision to consolidate the hearing on this motion with a trial on the merits, the Court hereby enters a declaratory judgment that Vernon's curfew ordinance does not violate the United States Constitution for any of the reasons alleged by the plaintiffs. The plaintiffs' claims under the Connecticut Constitution may be refiled without prejudice after the Connecticut Supreme Court issues a ruling on the certified questions of law.

Counsel for the plaintiffs and the defendants are directed to jointly prepare, or separately if they are unable to agree, a proposed certification order consistent with Conn. Stat. § 51–199(a), setting forth the questions of law to be certified, and a statement fully setting forth the nature of this controversy and all relevant facts. The parties shall file their proposed certification order within thirty (30) days of the date of this order. This case shall remain open pending resolution of the plaintiffs' claims under the Connecticut Constitution.