IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————————

No. 92-1707

———————————————


ELIZABETH QUTB, Individually and as
next friend of Sabrina Qutb, ET AL.,

                                    Plaintiffs-Appellees,

versus

ANNETTE STRAUSS, Mayor of the City of
Dallas, TX, ET AL.,

                                    Defendants,

versus

STEVE BARTLETT, Mayor of the City of
Dallas, TX, ET AL.,

                                    Defendants-Appellants.

———————————————————————————————————

Appeal from the United States District Court for the
Northern District of Texas

———————————————————————————————————
(  November 19, 1993    )

Before KING and JOLLY, Circuit Judges, and PARKER, District Judge.[*]

E. GRADY JOLLY, Circuit Judge:

This appeal presents a challenge to the constitutionality of a nocturnal juvenile curfew ordinance enacted by Dallas, Texas. The ordinance makes it a misdemeanor for persons under the age of seventeen to use the city streets or to be present at other public

———————————

[*]Chief Judge of the Eastern District of Texas, sitting by designation.

places within the city between certain hours.[1] Several plaintiffs brought suit against the city to strike down the ordinance. The district court ruled for the plaintiffs, holding that the ordinance violated both the United States and the Texas Constitutions, and permanently enjoined enforcement of the ordinance. The city appeals. Because we conclude that this ordinance does not violate the United States or Texas Constitutions, we reverse the district court.

I

On June 12, 1991, in response to citizens' demands for protection of the city's youth, the Dallas City Council enacted a juvenile curfew ordinance. This ordinance prohibits persons under seventeen years of age[2] from remaining in a public place or establishment from 11 p.m. until 6 a.m. on week nights, and from 12 midnight until 6 a.m. on weekends. As defined by the ordinance, a "public place" is any place to which the public or a substantial group of the public has access, and includes streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops. "Establishment" is defined as "any privately-owned place of business operated for a

_____

[1]A copy of the ordinance is attached. All references to the ordinance concern the ordinance as it was amended in June 1992, unless otherwise stated.

[2]The ordinance does not apply to persons under the age of seventeen who are married, or who have been married, or who have had the disability of minority removed in accordance with Chapter 31 of the Texas Family Code.

-2-

profit to which the public is invited, including but not limited to any place of amusement or entertainment."

Although the ordinance restricts the hours when minors are allowed in public areas, the ordinance also contains a number of exceptions, or defenses. A person under the age of seventeen in a public place during curfew hours does not violate the ordinance if he or she is accompanied by a parent[3] or guardian, or is on an errand for a parent or guardian. Likewise, minors would be allowed in public places if they are in a motor vehicle travelling to or from a place of employment, or if they are involved in employment related activities. Affected minors could attend school, religious, or civic organizational functions--or generally exercise their First Amendment speech and associational rights--without violating the ordinance. Nor is it a violation to engage in interstate travel, or remain on a sidewalk in front of the minor's home, or the home of a neighbor. And finally, the ordinance places no restrictions on a minor's ability to move about during curfew hours in the case of an emergency.

A minor violates the curfew if he or she remains in any public place or on the premises of any establishment during curfew hours, and if the minors' activities are not exempted from coverage. If

---

[3]Under the ordinance, the definition of "parent" includes a person who is "a natural parent, adoptive parent, or step-parent of another person" and those persons who are "at least 18 years of age and authorized by a parent or guardian to have care and custody of a minor."

a minor is apparently violating the ordinance, the ordinance requires police officers to ask the age of the apparent offender, and to inquire into the reasons for being in a public place during curfew hours before taking any enforcement action. An officer may issue a citation or arrest the apparent offender only if the officer reasonably believes that the person has violated the ordinance and that no defenses apply. If convicted, an offending party is subject to a fine not to exceed $500.00 for each separate offense.

Like minors who have violated the offense, a parent of a minor, or an owner, operator, or employee of a business establishment is also subject to a fine not to exceed $500 for each separate offense. A parent or guardian of a minor violates the ordinance if he or she knowingly permits, or by insufficient control allows, a minor child to remain in any public place or on the premises of any establishment during curfew hours. An owner, operator, or employee of a business establishment commits an offense by knowingly allowing a minor to remain upon the premises of the establishment during curfew hours.

II

On July 3, 1991, two weeks after the ordinance was enacted, Elizabeth Qutb and three other parents filed suit--both individually and as next friends of their teenage children--seeking a temporary restraining order and a permanent injunction against the enforcement of the juvenile curfew ordinance on the basis that

-4-

the ordinance is unconstitutional.[4]  The district court certified the plaintiffs as a class that consisted of two sub-classes: persons under the age of seventeen, and parents of persons under the age of seventeen.  One week later, the court advanced the trial on the merits, and consolidated the trial with the hearing on the plaintiffs' request for temporary and permanent injunctions.  The case was tried on July 22-23, and the district court denied the plaintiffs' request for a temporary injunction.  The city, however, voluntarily delayed enforcement of the curfew pending the district court's decision on the merits.

On June 12, 1992,  before the district court issued its final order on the merits of the case, the city voluntarily amended the curfew ordinance.  The amended ordinance deleted or altered some of the provisions of which the plaintiffs complained, while expanding some of the defenses available to affected minors.  In response to the revised ordinance, the plaintiffs filed an amended complaint and an amended motion for a permanent injunction against

---

[4]Before the district court, the plaintiffs asserted several grounds for holding the ordinance unconstitutional.  First, they argued that the ordinance impermissibly restricts First Amendment rights of free speech and free association.  They also contended that the ordinance violates the Fourth and Fourteenth Amendment right against unreasonable searches and seizures, and that the ordinance divests them of their Fifth and Fourteenth Amendment rights to a presumption of innocence, proof beyond a reasonable doubt, and freedom against self-incrimination. Plaintiffs further maintained that the ordinance violates the equal protection clause, and implicates fundamental liberty and privacy interests protected by the due process clause of the Fourteenth Amendment.  Finally, plaintiffs argued that the ordinance is vague and overly broad.

enforcement of the curfew. The district court held a second evidentiary hearing, where both parties presented additional evidence and arguments concerning validity of the revised ordinance under the United States and Texas constitutions. On August 10, 1992, the district court held that the curfew impermissibly restricted minors' First Amendment right to associate, and that it created classifications that could not withstand constitutional scrutiny.[5] Accordingly, the district court permanently enjoined enforcement of the curfew, and the city now appeals.

III

A

We review de novo the district court's conclusions of constitutional law. Peyote Way Church of God, Inc. v. Thornburgh, 922 F.2d 1210, 1213 (5th Cir. 1991); Shillingford v. Holmes, 634 F.2d 263, 266 (5th Cir. 1981). The minor plaintiffs argue, inter alia, that the curfew ordinance violates the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Only if the challenged government action classifies or distinguishes between two or more relevant groups must we conduct

_____

[5]Because the district court held the ordinance unconstitutional on the equal protection and free association grounds, the district court did not reach the other arguments presented by the plaintiffs.

an equal protection inquiry. <u>Brennan v. Stewart</u>, 834 F.2d 1248, 1257 (5th Cir. 1988). Here, it is clear that the curfew ordinance distinguishes between classes of individuals on the basis on age, treating those persons under the age of seventeen differently from those persons age seventeen and older. Because the curfew ordinance distinguishes between two groups, we must analyze the curfew ordinance under the Equal Protection Clause.

Under the Equal Protection analysis, we apply different standards of review depending upon the right or classification involved. If a classification disadvantages a "suspect class" or impinges upon a "fundamental right," the ordinance is subject to strict scrutiny. <u>Plyler v. Doe</u>, 457 U.S. 202, 216-17, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). Under the strict scrutiny standard, we accord the classification no presumption of constitutionality. <u>Town of Ball v. Rapides Parish Police Jury</u>, 746 F.2d 1049, 1059 (5th Cir. 1984). Instead, we ask whether the classification promotes a compelling governmental interest and, if so, whether the ordinance is narrowly tailored such that there are no less restrictive means available to effectuate the desired end. <u>Pugh v. Rainwater</u>, 557 F.2d 1189, 1195 (5th Cir. 1977), <u>vacated on other grounds</u>, 572 F.2d 1053 (5th Cir. 1978)

In this case, no one has argued, and correctly so, that a classification based on age is a suspect classification. <u>See</u> <u>Gregory v. Ashcroft</u>, ___ U.S. ___, 111 S.Ct. 2395, 2406, 115 L.Ed.2d 410 (1991)(holding that age is not a suspect class). The

minor plaintiffs, however, have argued that the curfew ordinance impinges upon their "fundamental right" to move about freely in public. For purposes of our analysis, we assume without deciding that the right to move about freely is a fundamental right. We are mindful, however, that this ordinance is directed solely at the activities of juveniles and, under certain circumstances, minors may be treated differently from adults.[6]

B

Because we assume that the curfew impinges upon a fundamental right, we will now subject the ordinance to strict scrutiny review. As stated earlier, to survive strict scrutiny, a classification created by the ordinance must promote a compelling governmental interest, and it must be narrowly tailored to achieve this interest. Plyler v. Doe, 457 U.S. at 216-17. The city's stated interest in enacting the ordinance is to reduce juvenile crime and victimization, while promoting juvenile safety and well-being. The Supreme Court has recognized that the state "has a strong and legitimate interest in the welfare of its young citizens, whose

_____

[6] In Bellotti v. Baird, the Court recognized that there were three reasons that allows a court to treat the rights of minors differently from rights of adults: the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child rearing. Bellotti v. Baird, 443 U.S. at 634. This analysis affects the balancing between of the state's interest against the interests of the minor when determining whether the state's interest is compelling. However, given the fact that the parties and the district court all agree that the interest of the state in this instance is compelling, it is unnecessary to conduct a full Bellotti analysis.

immaturity, inexperience, and lack of judgment may sometimes impair their ability to exercise their rights wisely."  Hodgson v. Minnesota, 497 U.S. 417, 444, 110 S.Ct. 2926, 2942, 111 L.Ed.2d 344 (1990).  In this case, the plaintiffs concede and the district court held that the state's interest in this case is compelling. Given the fact that the state's interest is elevated by the minority status of the affected persons, we have no difficulty agreeing with the parties and with the district court.

C

In the light of the state's compelling interest in increasing juvenile safety and decreasing juvenile crime, we must now determine whether the curfew ordinance is narrowly tailored to achieve that interest.  The district court held that the city "totally failed to establish that the Ordinance's classification between minors and non-minors is narrowly tailored to achieve the stated goals of the curfew."  We disagree.

To be narrowly tailored, there must be a nexus between the stated government interest and the classification created by the ordinance.  City of Richmond v. J.A. Croson, Co., 488 U.S. 469, 493, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989).  This test "ensures that the means chosen 'fit' this compelling goal so closely that there is little or no possibility that the motive for the classification was illegitimate. . . ."  Id.

The articulated purpose of the curfew ordinance enacted by the city of Dallas is to protect juveniles from harm, and to reduce

juvenile crime and violence occurring in the city.  The ordinance's

distinction based upon age furthers these objectives.  Before the

district court, the city presented the following statistical

information:

1.    Juvenile crime increases proportionally with age between ten years old and sixteen years old.

2.    In 1989, Dallas recorded 5,160 juvenile arrests, while in 1990 there were 5,425 juvenile arrests.  In 1990 there were forty murders, ninety-one sex offenses, 233 robberies, and 230 aggravated assaults committed by juveniles.  From January 1991 through April 1991, juveniles were arrested for twenty-one murders, thirty sex offenses, 128 robberies, 107 aggravated assaults, and 1,042 crimes against property.

3.    Murders are most likely to occur between 10:00 p.m. and 1:00 a.m. and most likely to occur in apartments and apartment parking lots and streets and highways.

4.    Aggravated assaults are most likely to occur between 11:00 p.m. and 1:00 a.m.

5.    Rapes are most likely to occur between 1:00 a.m. and 3:00 a.m. and sixteen percent of rapes occur on public streets and highways.

6.    Thirty-one percent of robberies occur on streets and highways.

Although the city was unable to provide precise data concerning the

number of juveniles who commit crimes during the curfew hours, or

the number of juvenile victims of crimes committed during the

curfew, the city nonetheless provided sufficient data to

demonstrate that the classification created by the ordinance "fits"

the state's compelling interest.[7]

_____

        [7]Plaintiffs argue that because the city failed to offer statistical evidence supporting the nocturnal juvenile crime

-10-

Furthermore, we are convinced that this curfew ordinance also employs the least restrictive means of accomplishing its goals. The ordinance contains various "defenses" that allow affected minors to remain in public areas during curfew hours. Although the district court concluded that "[i]t is what the Ordinance restricts . . . and not what it exempts that matters the most," it is clear to us that neither the restrictions of the curfew ordinance nor its defenses can be viewed in isolation from each other; the ordinance can be examined fairly only when the defenses are considered as a part of the whole. To be sure, the defenses are the most important consideration in determining whether this ordinance is narrowly tailored.

In the past, curfew ordinances have been held unconstitutional because of their broad general applications. In <u>Johnson v. City of Opelousas</u>, for example, we addressed a juvenile curfew ordinance and declared it unconstitutional; our holding, however, was

---

problem, the city failed to meet its burden of proving the necessary "fit" between the compelling state interest and the curfew. We will not, however, insist upon detailed studies of the precise severity, nature, and characteristics of the juvenile crime problem in analyzing whether the ordinance meets constitutional muster when it is conceded that the juvenile crime problem in Dallas constitutes a compelling state interest. In this same vein, the plaintiffs arguments that the city has not produced proof of the effectiveness of the ordinance in addressing the juvenile crime problem are unavailing; indeed, such "proof" can hardly amount to more than mere speculation. Federal courts have always been reluctant to question the potential effectiveness of legislative remedies designed to address societal problems. As we have held in other contexts, we "do not demand of legislatures scientifically certain criteria of legislation." <u>Ginsberg v. New York</u>, 390 U.S. at 642 (internal quotes omitted).

"expressly limited to the unconstitutional overbreadth of the ordinance." Johnson v. City of Opelousas, 658 F.2d at 1074. Furthermore, we stated that "[w]e express no opinion on validity of curfew ordinances narrowly drawn to accomplish proper social objectives." Id. at 1072. In declaring the Johnson ordinance to be an undue burden on the rights of minors, we noted that:

> [U]nder this curfew ordinance minors are prohibited from attending associational activities such as religious or school meetings, organized dances, and theater and sporting events, when reasonable and direct travel to or from these activities has to be made during the curfew period. The same inhibition prohibits parents from urging and consenting to such protected associational activity by their minor children. The curfew ordinance also prohibits a minor during the curfew period from, for example, being on the sidewalk in front of his house, engaging in legitimate employment, or traveling through [the city] even on an interstate trip. These implicit prohibitions of the curfew ordinance overtly and manifestly infringe upon the constitutional rights of minors in [the city].

Id. We therefore concluded that the "curfew ordinance, however valid might be a narrowly drawn curfew to protect society's valid interests, [swept] within its ambit a number of innocent activities which are constitutionally protected." Id. at 1074 (emphasis added). In Johnson, we further stated that

> [r]egardless of the legitimacy of [the city's] stated purposes of protecting youths, reducing nocturnal juvenile crime, and promoting parental control over their children, less drastic means are available for achieving these goals. Since the absence of exceptions in the curfew ordinance precludes a narrowing construction, we are compelled to rule that the ordinance is constitutionally overbroad.

Id. (emphasis added).

-12-

With the ordinance before us today, the city of Dallas has created a nocturnal juvenile curfew that satisfies strict scrutiny. By including the defenses to a violation of the ordinance, the city has enacted a narrowly drawn ordinance that allows the city to meet its stated goals[8] while respecting the rights of the affected minors.  As the city points out, a juvenile may move about freely in Dallas if accompanied by a parent or a guardian, or a person at least eighteen years of age who is authorized by a parent or guardian to have custody of the minor.  If the juvenile is traveling interstate, returning from a school-sponsored function, a civic organization-sponsored function, or a religious function, or going home after work, the ordinance does not apply.  If the juvenile is on an errand for his or her parent or guardian, the ordinance does not apply.  If the juvenile is involved in an

_____

[8]According to the city, its goals in enacting the ordinance are to (1) reduce the number of juvenile crime victims; (2) reduce injury accidents involving juveniles; (3) reduce additional time for officers in the field; (4) provide additional options for dealing with gang problems; (5) reduce juvenile peer pressure to stay out late; and (6) assist parents in the control of their children.  The aim of the ordinance is to deter criminal conduct involving juveniles as well as penalize those individuals who violate it.  However, the city states that its intent is not to penalize every youth found in public during curfew hours, but to use the ordinance as a tool to help address other criminal activity problems that involve or may potentially involve juveniles.  The curfew ordinance provides an officer with reasonable suspicion to approach gangs to determine if any of them are juveniles. According to the city, the curfew ordinance can help address Dallas's gang problem because gang members often congregate in public and set up an environment where criminal activities take place, such as drive-by shootings, fights, and "turf" disputes.

emergency, the ordinance does not apply.  If the juvenile is on a sidewalk in front of his or her home or the home of a neighbor, the ordinance does not apply.  Most notably, if the juvenile is exercising his or her First Amendment rights, the curfew ordinance does not apply.

Against the ordinance's an expansive list of defenses, the district court attempted to provide examples of activities with which the curfew ordinance would interfere.  The district court suggested the example of "a midnight basketball league aimed solely at keeping juveniles off of the streets" to demonstrate that participation in legitimate desirable activities would violate the ordinance unless the activities were officially organized, sponsored, or supervised by the city, a school, a civic association, or some "other entity."  In its effort to demonstrate that the ordinance was overly broad, the district court referred to concerts, movies, plays, study groups, or church activities that may extend past curfew hours.  The district court finally noted that "every juvenile in the city could be arrested and fined up to $500.00 upon conviction if he or she merely sought to take an innocent stroll or `gaze at the stars from a public park.'"

With due respect to the able district court, we are convinced that upon examination its analysis collapses.  It is true, of course, that the curfew ordinance would restrict some late-night activities of juveniles; if indeed it did not, then there would be no purpose in enacting it.  But when balanced with the compelling

interest sought to be addressed--protecting juveniles and preventing juvenile crime--the impositions are minor. The district court failed to observe that none of the activities it listed are restricted if the juvenile is accompanied by a parent or a guardian. Even if the child is unaccompanied by a parent or a guardian, we can presume that most events such as a "midnight basketball league" or a church youth group outing ordinarily would be organized, sponsored or supervised by an adult or an organization, and these are exceptions to the curfew. Although it is true that in some situations unaccompanied juveniles may be forced to attend early evening features of a movie or leave a play or concert before its conclusion, this imposition is ameliorated by several of the ordinance's defenses so that the juvenile is not deprived of actually attending such cultural and entertainment opportunities. Furthermore, a juvenile can take an "innocent stroll" and stare at the stars until 11:00 on week-nights and until 12:00 midnight on weekends; indeed, a juvenile may stare at the stars all night long from the front sidewalk of his or her home or the home of a neighbor. Thus, after carefully examining the juvenile curfew ordinance enacted by the city of Dallas, we conclude that it is narrowly tailored to address the city's compelling interest and any burden this ordinance places upon minors' constitutional rights will be minimal.[9]

_____

[9]The minor plaintiffs argued and the district court held that the minors' first amendment rights of association are also

-15-

In addition to the claims presented by the minor plaintiffs, the parental plaintiffs argue that the curfew ordinance violates their fundamental right of privacy because it dictates the manner in which their children must be raised. Although we recognize that a parent's right to rear their children without undue governmental interference is a fundamental component of due process, see, e.g., Ginsberg v. New York, 390 U.S. at 639, we are convinced that this ordinance presents only a minimal intrusion into the parents' rights. In fact, the only aspect of parenting that this ordinance bears upon is the parents' right to allow the minor to remain in public places, unaccompanied by a parent or guardian or other authorized person, during the hours restricted by the curfew ordinance. Because of the broad exemptions included in the curfew

---

impermissibly impinged upon by the curfew ordinance. We disagree. First, it is questionable whether a fundamental right of association is implicated. The Supreme Court has held that there is no "generalized right of social association," Dallas v. Stanglin, 490 U.S. 19, 479, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989)(internal quotes omitted), and, that seems to be precisely the type of association we are primarily concerned with in this case. Even in those instances when minors may, for example, associate for political or religious reasons, the majority of those situations will be exempted under one of the defenses to the curfew ordinance. In any event, we have determined that this curfew ordinance satisfies strict scrutiny, and any negligible burden on the individual's right to associate is outweighed by the compelling interests of the state.

We have also considered the minor plaintiffs' Equal Protection argument in the light of the Texas Constitution. We find nothing and we have been pointed to no authority--other than an unrelated defamation case--that warrants a different treatment of this issue under the state constitution.

ordinance, the parent retains the right to make decisions regarding his or her child in all other areas:  the parent may allow the minor to remain in public so long as the minor is accompanied by a parent or guardian, or a person at least eighteen years of age who is authorized by a parent or guardian to have custody of the minor. The parent may allow the minor to attend all activities organized by groups such as church groups, civic organizations, schools, or the city of Dallas.  The parent may still allow the child to hold a job, to perform an errand for the parent, and to seek help in emergency situations.

In this case, the parents have failed to convince us that the ordinance will impermissibly impinge on their rights as parents. The parents' only "evidence" to support their argument is the testimony of the mother of one of the plaintiffs that her daughter would soon be going to college, and the curfew ordinance--applying only between 11 p.m. and 6 a.m.--would somehow deprive her daughter of the opportunity to learn to manage her time and make decisions before going away to college.  Certainly this testimony is insufficient to support the district court's finding that the ordinance unconstitutionally infringed the liberty and privacy interests of parents.[10]

---

[10]The parents also assert that the curfew ordinance is unconstitutional under the Texas Constitution based on an invasion of parental privacy.  We recognize that the Texas courts have construed the Equal Protection Clause of the Texas Constitution more expansively than that of the United States Constitution in the area of homosexual rights.  See State v. Morales, 826 S.W.2d 201,

In conclusion, we find that the state has demonstrated that the curfew ordinance furthers a compelling state interest, <u>i.e.</u>, protecting juveniles from crime on the streets. We further conclude that the ordinance is narrowly tailored to achieve this compelling state interest.[11] Accordingly, we hold that the nocturnal juvenile curfew ordinance enacted by the city of Dallas is constitutional. The judgment of the district court is therefore

R E V E R S E D.


KING, Circuit Judge, specially concurring:

I concur in the result reached by the majority without expressing a view on the method by which the majority has reached that result.

---

204 (Tex. App.--Austin, 1992, writ denied). We were unable, however, to find any authority that supports the notion that the Texas Constitution would provide more protection in the area of parental privacy.

[11]We can also envision the constitutionality of a narrowly drawn nocturnal juvenile curfew ordinance that applies only in a municipality's high risk, high crime areas or danger zones.