Darrin B. Derosia, Esq. Informal Opinion Corporation Counsel No. 2005-13 City of Cohoes City Hall, 97 Mohawk Street Cohoes, NY 12047-2897
Dear Mr. Derosia:
You have inquired as to whether the City of Cohoes may enact by ordinance or local law a juvenile curfew, restricting minors from being in a public place between certain times of the day. You have also asked whether the City may charge parents or guardians with a violation, punishable by a $250 fine and/or 15 days in jail, if their minor child violates the curfew. In your request, you ask us to assume that the City can demonstrate an important governmental objective and indicate that the law would provide legally permissible reasons for a minor to be out during the restricted times. You also note that there is currently debate as to whether the law would apply only to children under 16 years of age, or all minors, i.e., persons under 18 years of age. In this regard, you also question whether the result would differ if the law charging a parent with a violation only applies to minors under the age of 16. We conclude that under New York's Municipal Home Rule Law, the City has the authority, in the exercise of its police powers, to enact a juvenile curfew, but the ordinance must comply with relevant constitutional restrictions. We further conclude that the City may not hold parents or legal guardians criminally liable should their minor children violate such a curfew.
I. Ability to Enact Juvenile Curfew Law
You have asked whether the City may enact a juvenile curfew law. Municipalities have been granted broad power by the state Constitution to enact local legislation related to the welfare of its citizens:
 In addition to powers granted in the statute of local governments or any other law . . . (ii) every local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to the following subjects . . . (10) The government, protection, order, conduct, safety, health and well-being of persons or property therein.
See N.Y. Const. Art. IX, § 2(c); see also New York State ClubAssoc. Inc. v. City of New York, 69 N.Y.2d 211, 217 (1987). This authority, known as a municipality's "police power," id. at 217 n. 2., is codified in the Municipal Home Rule Law. See Municipal Home Rule Law § 10(1)(ii)(a)(12) (municipalities are authorized to adopt local laws, not inconsistent with the Constitution or any general law, relating to "[t]he government, protection, order, conduct, safety, health and well-being of persons or property therein"). We believe that the City may validly exercise its police power by enacting a local juvenile curfew law if the City reasonably finds that the curfew is necessary for protection of its citizens. See In re Michael G., 99 Misc.2d 699 (N.Y.Fam.Ct. 1979) (dictum) (curfew ordinance is statutorily permissible exercise of police power if it passes constitutional muster); see
also 1980 Op. Att'y Gen. (Inf.) 256; 1967 Op. Att'y Gen. (Inf.) 141.
Nonetheless, the enactment of such a curfew must comply with relevant constitutional requirements. In considering the constitutionality of juvenile curfew laws in Ramos v. Town of Vernon, 353 F.3d 171 (2d Cir. 2003), the United States Court of Appeals for the Second Circuit clarified the constitutional requirements applicable to such local laws. In that case, the Court applied "intermediate scrutiny" to the juvenile curfew ordinance of a town in Connecticut, holding that in order to afford minors equal protection of the laws, as required by theFourteenth Amendment to the U.S. Constitution, the law must be substantially related to an important governmental interest. Id. at 180; see also Hutchins v. District of Columbia, 188 F.3d 531
(D.C. Cir. 1999) (upholding curfew law after applying intermediate level of scrutiny); Schleifer v. City of Charlottesville,159 F.3d 843 (4th Cir. 1998), cert. denied, 526 U.S. 1018 (1999) (same);but see Nunez v. City of San Diego, 114 F.3d 935 (9th Cir. 1997) (applying strict scrutiny and finding juvenile curfew law unconstitutional); Qutb v. Strauss, 11 F.3d 488 (5th Cir. 1993) (applying strict scrutiny and finding juvenile curfew law constitutional). The Second Circuit further noted that in the context of minors' rights,
 an important governmental objective would, at the very least, address the vulnerabilities particular to minors . . . . Identifying the true beneficiaries of a restriction of this sort is particularly important in assessing both the legitimacy of the government's objectives and the relationship of these objectives to the means employed to achieve them.
Ramos, 353 F.3d at 180. Moreover, the important objective may not be defined by reliance upon stereotypes and assumptions about young people. Id. at 181.
Additionally, the municipality seeking to enact such an ordinance bears the burden of proving the ordinance's substantiality of relationship to the asserted important objective. Id. at 183. While it "need not produce evidence to a scientific certainty," it must nonetheless point to some factual predicate which prompted the legislative enactment, and show the logical connection between the remedy chosen and that predicate. Id. at 183-84. A documentary record of the city council's discussions regarding the need for the curfew and the research underlying its scope, for example, will be helpful in supporting a curfew, assuming a logical link between the facts and the remedy. Id.
We therefore conclude that the City has the authority under Municipal Home Rule Law § 10(1)(ii)(a)(12) to enact a juvenile curfew law. You did not ask, and we offer no opinion on, whether the City can meet the relevant constitutional requirements.
II. Ability to Hold Parents Criminally Liable for Children'sViolations of Curfew Law
With respect to whether the City may charge parents of minors who violate a curfew with a violation, punishable by fine and/or imprisonment, we have previously opined that "[a] municipality has no authority to enact a curfew that holds parents responsible for their children's violation of the curfew." 1980 Op. Att'y Gen. (Inf.) 256; see also 1977 Op. Att'y Gen. (Inf.) 308. We based our previous opinions on the fact that the Legislature had preempted the field of legislation concerning parental responsibility for the acts of a minor, citing a series of statutes effectuating this purpose. See, id., citing General Obligations Law ("GOL") §§ 3-112 (imposing civil liability on parent of child who willfully, maliciously or unlawfully damages or destroys real or personal property), 3-113 (same with respect to cemetery plots); General Municipal Law § 78-a (same with respect to municipally-owned property); Executive Law § 171 (same with respect to state-owned property); Education Law §§ 1604(35) (same with respect to property owned by school district), 1709(36) (same), 2503(18) (same), 2554(16-c) (same), 2590-g(15) (same); Penal Law §260.10(2) (imposing criminal liability on person legally charged with care of child who fails to exercise reasonable diligence in control of child to prevent child from becoming juvenile delinquent or person in need of supervision).
The Legislature amended GOL § 3-112 in 1995, repealing many of the statutes that we previously cited, see Act of August 2, 1995, ch. 398, 1995 McKinney's N.Y. Laws 1257, and thus you have asked whether the City may now enact a juvenile curfew law that would make the parent criminally liable for a violation by the child. We are of the opinion that the City may not.
Initially, we note that the repeal of many of the statutes cited in our 1980 opinion — those making parents civilly liable for damage done to property by their children — was in fact a consolidation of those provisions into the current GOL § 3-112.See, e.g., N.Y. State Assembly Memorandum in Support of Legislation, reprinted in Bill Jacket for ch. 398 (1995), at 7-8 (the Legislature's goal in amending the GOL was "to consolidate various similar statutes on the liability of parents . . . into one statute in one location"). The repeal, therefore, does not necessarily indicate that the Legislature intended to narrow the scope of state legislation with respect to the civil liability of parents for acts of their children.
Criminal liability of parents for the acts of children, which is the subject of your inquiry, is provided for in Penal Law §260.10(2), cited in our previous opinions, and has not been repealed. Pursuant to Penal Law § 260.10(2), a parent or legal guardian is guilty of endangering the welfare of a child for "fail[ing] or refus[ing] to exercise reasonable diligence in the control of such child to prevent him from becoming . . . a `juvenile delinquent'[1] or a `person in need of supervision,'"[2] as those terms are defined in the Family Court Act. Penal Law §260.10(2). Thus, under state law, a parent who does not exercise the requisite diligence can be held criminally liable if his child engages in any activity that results in the child being determined a juvenile delinquent or a person in need of supervision.
Penal Law § 260.10(2) was intended to work in conjunction with the Family Court Act. With respect to the crimes of abandonment and neglect of a child, the Temporary State Commission on Revision of the Penal Law and Criminal Code stated:
 The primary objective of legislation in this area should be to compel recalcitrant parents and guardians to recognize and fulfill their legal and moral obligations of care and support. Since this is difficult to achieve by imprisoning offenders, the optimum solution is a judicial and administrative framework such as is found in the Family Court Act.
See Temporary State Commission on Revision of the Penal Law and Criminal Code, Proposed New York Penal Law, S. 3918, at 395 (1964).
Referring to the above comments, the Commission further stated with respect to the crime of endangering the welfare of a child (Penal Law § 260.10):
[T]he problems of the neglect of children and juvenile delinquency and the acts of adults which cause or foster these conditions are not usually soluble by the imposition of stringent sanctions. The better course is the one charted in the Family Court Act, which deals specifically and in detail with these problems. However, where the processes of the Family Court may be inappropriate in a particular instance, the proceedings can be referred to a criminal court. Subdivision 2 . . . complements and supplements the Family Court proceedings, and to promote uniformity, the definitions of . . . "juvenile delinquent" and "person in need of supervision" are here defined by cross-reference to the Family Court Act.
See Temporary State Commission on Revision of the Penal Law and Criminal Code, Proposed New York Penal Law, S. 3918, at 396 (1964); see also Statutes § 125, 1 McKinney's Cons. Laws of N.Y. at 259-60 (1971) (comments of commissions concerned with particular legislation persuasive on question of legislative intent when statute is enacted in identical or similar language as proposed).
The Legislature's intent to preempt a field need not be express and "may be implied from the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme." Albany Area Builders Ass'n v. Town of Guilderland,74 N.Y.2d 372, 377 (1989). Any local legislation in an area that the State has preempted is deemed inconsistent with state law, even in the absence of an actual conflict between the terms of the laws, because such local legislation would tend to inhibit the operation of the State's law and thwart the operation of the State's overriding policy concerns. Id.; see also Jancyn Mfg. Corp. v. County of Suffolk, 71 N.Y.2d 91, 97 (1987).
We continue to be of the opinion that local legislation in the field of parental criminal liability is preempted. Recognizing the problems associated with imposing criminal penalties on derelict parents, the Legislature enacted Penal Law § 260.10(2) with the intent that it would work in conjunction with the Family Court Act. It thus was intended to be a part of the comprehensive scheme provided by the Family Court Act for handling matters of insufficient supervision of children by parents. Moreover, Penal Law § 260.10(2) makes a parent culpable, not for a particular action of a child, but for any activity the child engages in that results in the child being determined a juvenile delinquent or a PINS, where the parent has not exercised reasonable diligence in supervising the child. This provision covers a broad range of activity, both criminal and non-criminal, by a child for which a parent can be held criminally responsible. The purpose and scope of Penal Law § 260.10(2) thus is such that we believe that it precludes local legislation in the field.
Furthermore, the nature of the area is such that legislation at the state level, rather than the municipal level, appears appropriate: imposition of criminal penalties on parents for behavior of a child impinges on the law of domestic relations, in that it involves the issue of control of a child by a parent. See Adler v. Deegan, 251 N.Y. 467, 489 (1929) (Cardozo, J., concurring) (characterizing the law of domestic relations as an "affair exclusively . . . of the State"); see also 1977 Op. St. Compt. 151 (local law creating liability on part of parents and legal guardians for willful destruction of municipal property by child "would concern the control of children by parents and legal guardians. Such control, we believe, is clearly beyond the powers of municipal corporations and is a matter in which the State alone can legislate.").
Therefore, for the reasons discussed above, we are of the opinion that the City may not enact a law holding parents criminally liable for curfew violations of their minor children.
The Attorney General issues formal opinions only to officers and departments of state government. Thus, this is an informal opinion rendered to assist you in advising the municipality you represent.
Very truly yours,
KATHRYN SHEINGOLD
Assistant Solicitor General In Charge of Opinions
PATRICK J. WALSH Assistant Solicitor General
[1] A "juvenile delinquent" is a person over seven and less then sixteen years of age, who, having committed an act that would constitute a crime if committed by an adult (a) is not criminally responsible for such conduct by reason of infancy, or (b) is the defendant in an action ordered removed from a criminal court to the family court. Family Court Act § 301.2(1).
[2] A "person in need of supervision" ("PINS") is, in relevant part, a person less than 18 years old who does not attend school in accordance with the provisions of the Education Law or who is incorrigible, ungovernable or habitually disobedient and beyond the lawful control of a parent or other person legally responsible for such child's care, or other lawful authority. Family Court Act § 712(a).