

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

May 1, 2006

The Honorable Norma Chávez
Chair, Committee on Border
    and International Affairs
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0425

Re: Whether the state or its political subdivisions may regulate international border crossings by persons under the age of 18 years, or whether the state may regulate the conduct of persons under the age of 18 years who are at or near an international border (RQ-0407-GA)

Dear Representative Chávez:

You ask whether the state or its political subdivisions may regulate international border crossings by persons under the age of 18 years, or whether the state may regulate the conduct of persons under the age of 18 years who are at or near an international border.[1]

You inform us that you have been appointed to chair the Binational Alcohol and Substance Abuse Task Force[2] (the "Task Force"), which is charged with "studying issues relating to binge drinking along the Texas-Mexico border."[3] Request Letter, *supra* note 1, at 1. The Task Force, you

---

[1]Letter from Honorable Norma Chávez, Chair, House Committee on Border and International Affairs, to Honorable Greg Abbott, Attorney General of Texas (Oct. 25, 2005) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

[2]*See* TEX. HEALTH & SAFETY CODE ANN. § 12.072 (Vernon Supp. 2005) (creating the Task Force).

[3]As a bill analysis for House Bill 3426, the legislation now codified as Health and Safety Code section 12.072, explains:

> The problem of underage and binge drinking in Mexico is a unique issue for communities along the southwest United States border. For many generations, border cities in Mexico have been destinations for youth for the purpose of tourism and evening entertainment. Differences in alcohol policies, the legal drinking age (18 years of age in Mexico and 21 years of age in the United States), and the standards and limitations of enforcement of United States and Mexico laws on alcohol consumption and public intoxication have contributed to significant public health and public safety problems on both sides of the international border.

SENATE COMM. ON INTERNATIONAL RELATIONS & TRADE, BILL ANALYSIS, Tex. H.B. 3426, 79th Leg., R.S. (2005).

aver, may recommend restricting a minor's movements at the Mexican border, a recommendation that mirrors legislation previously considered by the Seventy-eighth Legislature. *Id.* at 1–2; *see also* Tex. H.B. 3544, 78th Leg., R.S. (2003).[4]  You express doubt, however, about the state's or its political subdivisions' "legal authority to regulate the movement of people between countries as this issue is primarily within the federal government's jurisdiction and freedom of movement is generally considered to be a civil liberty." Request Letter, *supra* note 1, at 2.  Thus, you have contacted this office for an opinion on this issue.

You provide us with the Task Force's possible recommendation but not specific language that will be incorporated into proposed, future legislation.  Furthermore, we assume that whatever the Task Force's recommendation may be, it may vary substantially from House Bill 3544's language.  Consequently, we can advise you only on broad principles of the law as it affects your generally articulated goal—to reduce the problems along the Texas-Mexico border associated with minors who engage in binge drinking.

Your letter asks about a law "regulat[ing] the movement of people between countries," and thus you frame your request both as a question of individual civil liberties and as a question of state versus federal jurisdiction. *Id.* at 2.  In answer to your question about state versus federal jurisdiction, it is clear that a state law regulating international travel would intrude on federal jurisdiction and therefore would be preempted.[5]  However, to the extent the Task Force is considering a state law limited to restricting minors' conduct within Texas, we can see nothing that would limit the state from using its police powers[6] to carve out a geographic area within Texas in

---

[4]House Bill 3544 would have authorized Texas peace officers operating within Hidalgo and Cameron counties to prevent a person younger than 18 years of age who was attempting to cross the border between this state and Mexico from crossing unless the person was accompanied by a parent or guardian, or had written consent from the person's parent or guardian to cross the border, or held a current United States passport. *See* Tex. H.B. 3544, 78th Leg., R.S. (2003).  House Bill 3544 is similar to an existing California law, which reads in relevant part:

> A peace officer of any city shall prevent the entry from California into the Republic of Mexico at the border by any resident of this state under the age of 18 years who is unaccompanied by a parent or guardian or who does not have written consent for such entry from a parent or guardian or who does not have a passport.

CAL. WELF. & INST. CODE ANN. § 1500 (West 1998).

[5]*See, e.g., Buttfield v. Stranahan*, 192 U.S. 470, 492–93 (1904) (stating that the federal government has "exclusive and absolute" power over foreign commerce); *Zschernig v. Miller*, 389 U.S. 429, 436 (1967) (stating that the federal government has authority over foreign affairs and international relations); *see also* U.S. CONST. art. I, § 8, cls. 3, 11–12, 16 (authorizing the federal government to regulate foreign commerce, to raise an army, and conduct war,); U.S. CONST. art. II, § 2, cl. 2 (authorizing the federal government to enter into treaties and send and receive ambassadors); U.S. CONST. art. VI, cl. 2 (providing that federal law is the "supreme Law of the Land."). *See generally* Michael Hahn, *Sub-national "Sanctions" and the Federal Model*, 32 Law & Pol'y Int'l Bus 197 (2000) (discussing the evolving concepts of federal jurisdiction over foreign affairs and foreign commerce and how this jurisdiction affects states' rights to regulate activities within their own borders).

[6]It is axiomatic that the Texas public has granted authority over its health, safety, and welfare to the Texas government, which operates exclusively in these arenas within its borders. *See* U.S. CONST. amend. X; *cf. U.S. v.*

(continued...)

which a minor's conduct is restricted because of the dangerous condition[7] the area presents to the minor's health and safety. A law as an exercise of state police power is no more an intrusion on the federal government's authority over foreign affairs and foreign commerce than a city police officer stopping and issuing a speeding ticket to a person intending or about to cross the Texas border who has exceeded a posted limit. *Cf. Clark v. Allen*, 331 U.S. 503, 517 (1947) (a state law is not invalid though it may have an incidental or indirect effect in foreign countries). In short, the state may regulate minors' conduct at the border, but it may not regulate international border crossings.

Because we have concluded that it is permissible for the Task Force to recommend regulating minors' conduct at the border, we must also address your question concerning a minor's freedom of movement and whether a state restricting a minor's freedom of movement is impermissibly abridging that minor's civil liberties—a question to which we now turn.

We believe that the Task Force's potential recommendation to restrict a minor's conduct within Texas so that the minor is prohibited from purposelessly being near a border crossing is analogous to laws that have imposed curfews on minors during nighttime hours.[8] These curfew laws have been challenged principally on the basis that they impermissibly restrict a minor's right to freedom of movement. *See, e.g., Bykofsky v. Borough of Middletown*, 401 F. Supp. 1242, 1254–58 (M.D. Penn. 1975), *aff'd mem.*, 535 F.2d 1245 (3d Cir.), *cert. denied*, 429 U.S. 964 (1976) (discussing a minor's right to freedom of movement as the right is restricted by a curfew ordinance); *Qutb v. Strauss*, 11 F.3d 488, 492 (5th Cir. 1993) (discussing right to freedom of movement as the right is restricted by a curfew ordinance).

"The rights of locomotion, freedom of movement, to go where one pleases, and to use the public streets in a way that does not interfere with the personal liberty of others are basic values 'implicit in the concept of ordered liberty' protected by the due process clause of the fourteenth amendment." *Bykofsky*, 401 F. Supp. at 1254 (citations omitted). Although minors are persons under the United States Constitution "possessed of fundamental rights which the State must respect," *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 511 (1969), a state has an elevated interest in protecting minors. *See Qutb*, 11 F.3d at 492; *Bellotti v. Baird*, 443 U.S. 622, 634 (1979) (listing three reasons that permit a court to treat minors' rights differently from adults' rights: (1) to account for a minor's peculiar vulnerability; (2) to insure against a minor's inability to make

----

[6](...continued)
*Morrison*, 529 U.S. 598, 618 (2000) (reaffirming the intent in the United States Constitution to preserve the police powers in the states); *Ortiz v. U.S. Border Patrol*, 39 F. Supp. 2d 1321, 1326 (D.N.M. 1999) (determining that Border Patrol agents are not general law enforcement officers).

[7]*See* SENATE COMM. ON INTERNATIONAL RELATIONS & TRADE, BILL ANALYSIS, Tex. H.B. 3426, 79th Leg., R.S. (2005), *supra* note 3 (asserting that alcohol consumption and public intoxication pose significant public health and safety problems *in Texas* at the border).

[8]We note that the El Paso City Council recently amended its curfew ordinance in order to restrict minors' actions at the border for the purpose of reducing problems associated with minors' easy access to alcohol. *See* David Crowder, *Areas aim to stop teens' partying in Juarez*, El Paso Times, Mar. 15, 2006, *available at* http://www.elpasotimes.com /apps/pbcs.dll/article?AID=/20060315/NEWS/603150327/1001/ARCHIVES.

critical decisions in an informed, mature manner; and (3) to afford parents the ability to rear their children as they please). Thus, "[t]he state's authority over children's activities is broader than over like actions of adults" and merely because a state could not wholly prohibit certain adult activities "does not mean it cannot do so for children." *Prince v. Massachusetts*, 321 U.S. 158, 168 (1944).

State and federal courts would likely apply a strict scrutiny standard of review to a law that infringes on a minor's right to freedom of movement. *See Qutb*, 11 F.3d at 492 (assuming that freedom of movement is a fundamental right and subjecting a Dallas ordinance restricting minors' right to freedom of movement to strict scrutiny for infringing on that right).[9] In determining whether a law passes constitutional muster under a strict scrutiny standard, a court will ask whether the law "promotes a compelling governmental interest and, if so, whether the [law] is narrowly tailored such that there are no less restrictive means to effectuate the desired end." *Id.* "To be narrowly tailored, there must be a nexus between the stated government interest and the classification created by the [law]." *Id.* at 493. "This test 'ensures that the means chosen 'fit' this compelling goal so closely that there is little or no possibility that the motive for classification was illegitimate. . . .'" *Id.* (citation omitted).

Applying these standards in *Qutb*, the Fifth Circuit upheld a Dallas curfew ordinance that, among other things, made it an offense for a person under the age of seventeen to move about the city during certain nighttime hours unless the minor could prove one of seven defenses. *See id.* at 496–98. There the court found that the state had a compelling interest in increasing juvenile safety and decreasing juvenile crime and that imposing a curfew on minors served the state's compelling interest, even though "the city was unable to provide precise data concerning the number of juveniles who commit crimes during the curfew hours, or the number of juvenile victims of crimes committed during the curfew." *Id.* at 493. Moreover, the court held that the ordinance employed "the least restrictive means of accomplishing its goals," demonstrated by the ordinance's various defenses that "allow affected minors to remain in public areas during curfew hours," defenses that included traveling to or attending an official civic organization function, being engaged in an employment activity, or going to or returning home from an employment activity. *Id.* at 494.

By contrast, another curfew law affecting minors' rights has not passed constitutional muster because of its overbreadth. *See Johnson v. City of Opelousas*, 658 F.2d 1065 (5th Cir. 1981). Indeed, the Fifth Circuit struck down as overbroad a City of Opelousas, Louisiana curfew ordinance that prohibited "unemancipated minors generally from being on public streets between certain hours without their parents, with exception for minors on 'emergency errands.'" *See id.* at 1072. There the court noted that:

> [U]nder this curfew ordinance minors are prohibited from attending associational activities such as religious or school meetings,

---

[9]*But see Bykofsky*, 401 F. Supp. at 1265 (applying rational basis analysis to a law affecting minors' freedom of movement because age is not a suspect class and, for minors, freedom of movement is not a fundamental right); *Ramos v. Town of Vernon*, 353 F.3d 171, 175 (2d Cir. 2003) (applying intermediate scrutiny to a law affecting minors' freedom of movement because although freedom of movement is a fundamental right, strict scrutiny analysis cannot appropriately account for the special needs of minors).

> organized dances, and theater and sporting events, when reasonable and direct travel to or from these activities has to be made during the curfew period. The same inhibition prohibits parents from urging and consenting to such protected associational activity by their minor children. The curfew ordinance also prohibits a minor during the curfew period from, for example, being on the sidewalk in front of his house, engaging in legitimate employment, or traveling through [the city] even on an interstate trip. These implicit prohibitions of the curfew ordinance overtly and manifestly infringe upon the constitutional rights of minors in [the city].

*Id.* The lack of exceptions in the Louisiana curfew ordinance precluded a narrowing construction, and the court was "compelled" to rule that the ordinance was overbroad. *Id.* at 1074. "To be sure, the defenses are the most important consideration in determining whether [a law] is narrowly tailored." *Qutb*, 11 F.3d at 493–94.[10]

In sum, we take from these cases that laws restricting a minor's conduct within Texas, as the Task Force may propose, can be designed to survive a constitutional challenge. Curfew ordinances have permissibly restricted minors' right to freedom of movement. Any such restriction on a minor's rights must be created to further a compelling state interest and it must be narrowly tailored to achieve that end because a Texas court following Fifth Circuit precedent will likely apply strict scrutiny analysis. A state's interest is automatically elevated, however, by the affected person's status as a minor. Finally, special attention should be paid to providing defenses to minors who are within the restricted area for protected purposes.

---

[10]Indeed, failure to include defenses that allow for a minor to exercise his First Amendment rights is another basis for challenging the constitutionality of the law the Task Force may recommend. *See Bykofsky*, 401 F. Supp. at 1258 (noting that an exception in a curfew law that allowed for the bona fide exercise of First Amendment rights for political, religious, or communicative purposes was sufficient).

## S U M M A R Y

The state or its political subdivisions may not regulate international border crossings by persons under the age of 18 years. The state and its political subdivisions, however, may restrict persons under the age of 18 years from being in Texas areas near the Texas-Mexico border by creating a narrowly tailored law that furthers a compelling governmental interest.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Daniel C. Bradford
Assistant Attorney General, Opinion Committee