Lunn, J. (dissenting).
We respectfully dissent because we cannot agree with the majority that the juvenile curfew ordinance (hereafter ordinance) enacted by defendant City of Rochester (City) and codified as chapter 45 of the Rochester City Code (Code) imposes an unconstitutional restriction upon the rights of parents and persons defined as minors under the ordinance or that the ordinance is inconsistent with New York State law as it applies to minors under the age of 16. We therefore conclude that the judgment should be affirmed.
I
We first address the majority’s conclusion that the ordinance is unconstitutional. Initially, although we note that the majority correctly acknowledges that we should apply a higher level of scrutiny than the rational basis standard to plaintiffs’ equal protection challenge, we disagree with the majority that the strict scrutiny standard is appropriate. Strict scrutiny “reflects the notion that some rights are so important that they should be afforded to individuals in a manner blind to all group classifications, absent the most compelling reasons to do otherwise” (Ramos v Town of Vernon, 353 F3d 171, 179 [2003]). That notion “embodies a constitutional preference for ‘blindness’ ” to group classifications (id.). As the Second Circuit noted in Ramos, however, “blindness to a classification is not [always] the desired end” (id.). We agree with the majority that a minor’s right to free movement is fundamental, but we note that “[y]outhblindness is not a constitutional goal because, even with regard to fundamental rights, failing to take children’s particular attributes into account in many contexts . . . would be irresponsible” (id. at 180). Although the majority acknowledges “the inherent differences between children and adults, both mental and physical” (id. at 179), its application of the strict scrutiny standard *152 ignores those differences. We therefore choose to “adopt[ ] the more flexible, yet still searching, intermediate form of review” (id.; see Hutchins v District of Columbia, 188 F3d 531, 541 [1999]; Schleifer by Schleifer v City of Charlottesville, 159 F3d 843, 847 [1998], cert denied 526 US 1018 [1999]).
II
Despite its conclusion that strict scrutiny is the appropriate standard of review in the instant case, the majority proceeds to analyze defendants’ submissions through the lens of intermediate scrutiny and concludes that the ordinance would not pass muster even under that standard. In our view, however, defendants’ submissions demonstrate that there is a substantial relationship between the problems of violent juvenile crime and juvenile victimization and the means chosen to address those problems, i.e., the juvenile curfew. Thus, we conclude that the ordinance survives intermediate scrutiny (cf. Ramos, 353 F3d at 183-186). Although the majority correctly acknowledges that some of the statistics submitted by defendants indicate that most juvenile crime occurs outside the hours of the curfew, defendant Mayor averred that those statistics reflect the fact that most minors are at home in bed during the curfew hours. Contrary to the majority’s conclusion, the affidavit of the Mayor did not merely express his “opinions and beliefs concerning the particular vulnerability of juveniles during nighttime hours.” Admittedly, such unsupported opinions and beliefs would be insufficient to demonstrate the requisite substantial relationship between the ordinance and its goals (see id. at 186). Here, however, the Mayor’s affidavit was supported by the City’s crime statistics demonstrating that, between the years 2000 and 2005, 10.4% of the victims of violent crimes occurring between 11:30 p.m. and 5:00 a.m. in the City were under 18 years old. Furthermore, 9 of the 13 juvenile murder victims between the years 2000 and 2005 would have been in violation of the ordinance at the time of the murders. Other statistics submitted by defendants indicate that 10.9% of the suspects of the most serious violent crimes occurring between 11:30 p.m. and 5:00 a.m. were under the age of 18. Moreover, defendants’ submissions establish that 45% of all homicides in the City occurred during the curfew hours, as well as 40% of all calls for “shots fired.” Finally, defendants provided statistics from the City of Dallas indicating that, after the enactment of its juvenile curfew, there was a substantial decline in the number of juvenile arrests over a 10-year period.
*153 “[E]qual protection demands that the municipality ‘carefully stud[y] the contours of the problem it [is] seeking to address and legislate[ ] in accordance with its findings’ ” {id.). Defendants, however, “need not produce evidence to a scientific certainty of a substantial relationship” {id. at 183), and they are “not obliged to prove a precise fit between the nature of the problem and the legislative remedy—just a substantial relationship]” (Hutchins, 188 F3d at 543). Intermediate scrutiny does not require the imposition of such a heavy burden and, in our view, defendants met their burden of demonstrating a substantial relationship between the City’s objectives in enacting the ordinance and the means chosen to achieve those objectives (see id. at 542-544; Schleifer, 159 F3d at 849-851).
Ill
We further disagree with the majority that the ordinance imposes an unconstitutional burden on the First Amendment rights of juveniles. We conclude that the exceptions provided in section 45-4 of the Code[1] adequately protect the rights of minors to engage in constitutionally protected activities. We perceive no material distinction between the exceptions found in the ordinance at issue here and those in other municipalities that have withstood First Amendment challenges (see e.g. Hutchins, 188 F3d at 535, 548; Qutb v Strauss, 11 F3d 488, 490, 495 n 9 [1993]; see also Schleifer, 159 F3d at 846, 853-854; Treacy v Municipality of Anchorage, 91 P3d 252, 257 n 2, 263-264 [Alaska
*154 2004]). The majority makes much of the fact that the ordinance leaves the City’s police officers with discretion to determine whether a minor is engaged in constitutionally protected activities. The majority, however, cannot escape the reality that “[e]very criminal law . . . reposes some discretion in those who must enforce it. The mere possibility that such discretion might be abused hardly entitles courts to strike a law down” (Schleifer, 159 F3d at 854). Further, “[t]he basic protections of the First Amendment are ones that ordinary citizens know and comprehend” (Ramos v Town of Vernon, 48 F Supp 2d 176, 182 [1999], revd, on other grounds 353 F3d 171 [2003]). Surely, officers charged with the duty to enforce the ordinance may be included in the class of ordinary citizens that know and comprehend the basic protections afforded by the First Amendment. Essentially, the majority concludes that the exceptions provided in section 45-4 are unconstitutionally vague. In so concluding, the majority “placets] city councils between a rock and hard place. If councils draft an ordinance with exceptions, those exceptions are subject to a vagueness challenge. If they neglect to provide exceptions, then the ordinance is attacked for not adequately protecting First Amendment freedoms” (Schleifer, 159 F3d at 853). In our view, the “ordinance is constitutionally stronger” with the exceptions than it would be without them (id.).

W

We also cannot agree with the majority that the ordinance interferes with the right of plaintiff Thomas Anonymous (plaintiff father) to direct and control the upbringing of his son, plaintiff Jiovon Anonymous. It is well settled that parents have a fundamental due process right to raise their children with limited government interference (see generally Pierce v Society of Sisters, 268 US 510, 534-535 [1925]; Meyer v Nebraska, 262 US 390, 399-400 [1923]). Parental rights, however, are not absolute. Where a juvenile curfew ordinance is narrowly tailored to serve a compelling government interest and only minimally intrudes on parents’ rights, such an ordinance will not be struck down as unconstitutional (see Qutb, 11 F3d at 495-496; Treacy, 91 P3d at 268-269; cf. Nunez by Nunez v City of San Diego, 114 F3d 935, 952 [1997]). As previously discussed in section III, minors will not be in violation of the ordinance if they are engaged in the activities enumerated in section 45-4 of the Code. We thus conclude that the ordinance is narrowly tailored and *155 does not violate plaintiff father’s fundamental right to due process (see Qutb, 11 F3d at 495-496; Treacy, 91 P3d at 269).
V
We now address the majority’s conclusion that the consequences faced by curfew violators under the ordinance are inconsistent with Family Court Act § 305.2 and Penal Law § 30.00 as they apply to minors under the age of 16.[2] Pursuant to section 45-5 of the Code, a violation of section 45-3 “shall constitute a ‘violation’ as that term is defined in the New York State Penal Law.” Penal Law § 30.00 (1), however, provides that “a person less than sixteen years old is not criminally responsible for conduct,” except as provided in section 30.00 (2). Family Court Act § 305.2 (2) provides that “[a]n officer may take a child under the age of sixteen into custody without a warrant in cases in which he may arrest a person for a crime under [CPL article 140].” Inasmuch as “violations are not included in the definition of a ‘crime’, there is no authority to arrest” for a violation (Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 305.2, at 409).
We agree with the majority that Family Court Act § 305.2 and Penal Law § 30.00 establish that police officers are prohibited from arresting curfew violators under the age of 16. We part with the majority, however, insofar as we do not construe the ordinance as authorizing the arrest of any curfew violators. Instead, in our view, the procedures outlined in section 45-6[3] of *156 the Code provide for only the temporary detention of curfew violators by police officers pursuant to their noncriminal protective capacities and under New York State’s parens patriae interest (see generally Matter of Shannon B., 70 NY2d 458, 462-463 [1987]; Matter of Terrence G., 109 AD2d 440, 443 [1985]). We note that the detention of minors pursuant to the State’s parens patriae interest is generally noncriminal in nature (see generally Shannon B., 70 NY2d at 462; Terrence G., 109 AD2d at 443; Matter of De Crosta, 111 Misc 2d 716, 720 [1981]), and the ordinance does not distinguish between the authority of the police to enforce the ordinance with respect to 16-year-old minors and the lack of authority to enforce the ordinance with respect to. minors under the age of 16. The City’s Police Department (Police Department), however, acknowledges that distinction in its General Orders. Specifically, Police Department General Order 435 provides that juveniles cannot be arrested for status offenses, such as family problem violations, truancy and traffic offenses, but may nevertheless be taken into custody “to stop their actions.” That authority is conferred upon police officers by the Charter of the City of Rochester (Charter), which provides that “[t]he Chief of Police shall be responsible for the enforcement of penal laws and ordinances, the maintenance of order and the prevention of crime in the City of Rochester” (Charter § 8A-1 [C] [emphasis added]). That framework is consistent with the view of the Court of Appeals espoused in Shannon B. that:
“the role of the police is not limited to the enforcement of the criminal law. Instead, their role is ‘a multifaceted one . . . Among other functions, the police in a democratic society are charged with the protection of constitutional rights, the maintenance of order, the control of pedestrian and vehicular traffic, the mediation of domestic and other noncriminal conflicts and supplying emergency help and assistance’ ” (70 NY2d at 462).
We also disagree with the majority that the “legal consequence [of detaining curfew violators or taking them into custody] is indistinguishable from a formal arrest” (Matter of Martin S., 104 Misc 2d 1036, 1038 [1980]). In reality, curfew violators are not left to sit in the police station, but are instead *157 transported to the Hillside Children’s Center, where the minor’s guardian is immediately contacted and arrangements are made to have the minor returned home.
VI
In sum, we conclude that the ordinance does not unconstitutionally restrict the rights of parents and all persons defined as minors under the ordinance and that it is consistent with New York State law as it applies to minors under the age of 16.
Accordingly, we conclude that the judgment should be affirmed.
Martoche and Gorski, JJ., concur with Green, J.; Lunn, J., and Hurlbutt, J.E, dissent and vote to affirm in a separate opinion by Lunn, J.
It is hereby ordered that the judgment so appealed from is reversed on the law without costs, defendants’ motion is denied, the complaint is reinstated, plaintiffs’ motion is granted, judgment is granted in favor of plaintiffs as follows:
It is adjudged and declared that chapter 45 of the Code of the City of Rochester is unconstitutional under the United States and New York Constitutions, and defendants are enjoined from enforcing chapter 45 of the Code of the City of Rochester.

. Section 45-4 provides that:
“The prohibition contained in § 45-3 shall not apply if the minor can prove that:
“A. The minor was accompanied by his or her parent, guardian, or other responsible adult;
“B. The minor was engaged in a lawful employment activity or was going to or returning home from his or her place of employment;
“C. The minor was involved in an emergency situation;
“D. The minor was going to, attending, or returning home from an official school, religious, or other recreational activity sponsored and/or supervised by a public entity or a civic organization;
“E. The minor was in the public place for the specific purpose of exercising fundamental rights such as freedom of speech or religion or the right of assembly protected by the First Amendment of the United States Constitution or Article I of the Constitution of the State of New York, as opposed to generalized social association with others; or
“F. The minor was engaged in interstate travel.”

. We agree with the majority inasmuch as it concedes that the curfew ordinance is consistent with Family Court Act § 305.2 and Penal Law § 30.00 as it applies to 16-year-old minors.

. Section 45-6 provides that:
“A. A police officer may approach a person who appears to be a minor in a public place during prohibited hours to request information, including the person’s name and age and reason for being in the public place.
“B. A police officer may detain a minor or take a minor into custody based on a violation of § 45-3 if the police officer, after speaking with the minor and considering the facts and surrounding circumstances:
“(1) Reasonably believes that the minor has violated § 45-3; and “(2) Reasonably believes that none of the exceptions in § 45-4 apply-
“C. A police officer who takes a minor into custody based on a violation of § 45-3 shall take the minor to a location designated by the Chief of Police. The parent, guardian or other responsible adult shall be notified to come and take charge of the minor, un *156 less the minor requires further intervention in accordance with law.”